56 N.J. Super. 230 (1959)
152 A.2d 377
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN DAQUINO AND SAM DAQUINO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1958.
Supplemental briefs filed May 1, 1959.
Decided June 18, 1959.
*232 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Sam Weiss argued the cause for defendants-appellants (Mr. Frank J. Cavico, attorney).
Mr. Don A. Cetrulo, Legal Assistant Prosecutor, argued the cause for plaintiff-respondent (Mr. Charles V. Webb, Jr., Essex County Prosecutor, attorney).
*233 Mr. Francis A. Mulhern filed a brief for The Port of New York Authority, amicus curiae (Mr. Sidney Goldstein, General Counsel and Jeanne R. Silver of the New York Bar, on the brief).
The opinion of the court was delivered by CONFORD, J.A.D.
Defendants were convicted in the Municipal Court of the City of Newark of violating N.J.S.A. 32:1-146.6 and 146.7 (L. 1953, c. 171) (hereinafter referred to as the Terminal Act), which makes it a penal offense to sell merchandise at any terminal, including airports, operated by The Port of New York Authority ("Port Authority" hereinafter), without authorization by that agency. The evidence at the trial established that the defendants had for some time prior to March 28, 1958 been selling food from a lunch-wagon truck to the employees of Newark Air Service, a sub-lessee of the Port Authority at the Newark Airport; that they had no authorization from the Port Authority to do so; and that they continued this activity on the date mentioned in defiance of a direction from a Port Authority police officer to desist and remove their truck from the airport.
The conviction was affirmed by the Essex County Court on appeal by trial de novo on the record made in the municipal court. R.R. 3:10-2, 10.
In the defendants' brief on the present appeal, of nine specific questions stated as involved, six are identified by them as "not raised below." We find, moreover, that one of the questions not so identified was also not raised below. See R.R. 1:7-1(c). Some of the defenses urged in the lower tribunals are abandoned here. Thus the argument made before us is tantamount to the submission of a substantially different case from that passed upon by the trial courts. This presentation is repugnant to the spirit of our practice which contemplates that, except in extraordinary situations, as where public policy or jurisdiction are involved, a party shall make his points in the court of first instance before urging them as grounds on appeal. Domestic *234 Fuel Co. v. American Petroleum Corp., 6 N.J. 538, 542-544 (1951). Of the questions not raised below, therefore, we intend to treat only one, that which challenges the statute upon which the prosecution was based as denying the equal protection of the laws because devoid of a norm or standard to guide the agency in authorizing the sale of merchandise at the terminal. This issue involves an important question of public concern which has not heretofore been passed upon by our courts and should be settled.

I.
So far as here material the statute (Terminal Act) underlying the conviction reads as follows (L. 1953, c. 171, section 1; N.J.S.A. 32:1-146.6):
"The port of New York Authority (hereinafter called the "Port Authority") having duly adopted the following rules and regulations, hereinafter set forth in this section, in relation to peddling, soliciting of business, entertaining, begging or loitering at, on or in air, bus or marine terminals operated by it within the territorial limits of the State of New Jersey, the penalties and procedures for its enforcement prescribed in section two shall apply to violations thereof.
(1) No person, unless duly authorized by the Port Authority, shall, in or upon any area, platform, stairway, station, waiting room or any other appurtenance of an air or bus terminal, owned or operated by the Port Authority, or in or upon any area, bulkhead, dock, pier, wharf, warehouse, building, structure, shed, waiting room or any other appurtenance of a marine terminal, owned or operated by the Port Authority:
(a) sell, or offer for sale any article of merchandise; or
(b) solicit any business or trade, including the carrying of baggage for hire; the shining of shoes or bootblacking; * * *

* * * * * * * *"
Section 2 of the Terminal Act (N.J.S.A. 32:1-146.7) provides for penalties for its violation and methods of enforcement thereof.
The underlying authority for the promulgation of rules and regulations by the Port Authority appears to be Article XVIII of the Compact of April 30, 1921 between the States of New York and New Jersey creating the Port Authority, which declares that "the port authority is hereby authorized *235 to make suitable rules and regulations * * * which, when concurred in or authorized by the legislatures of both states shall be binding and effective upon all persons and corporations affected thereby." R.S. 32:1-1, 19. Article XIX enacts that the two states shall provide penalties for violations of any order, rule or regulation of the authority and for the enforcement thereof. R.S. 32:1-20. See the supplemental agreement of the states, enacted, for New Jersey, by L. 1951, c. 205 (N.J.S.A. 32:1-146.1 to 146.3).
In any case, defendants do not here argue that the rules and regulations mentioned in the Terminal Act were adopted without statutory authority and we give no further attention to any such question.
The strict question presented, in the language of defendants' brief, is whether the Terminal Act "violates the equalprotection clause of the Federal Constitution" for the reason that "no norm or standard is provided under which the Port Authority is to grant or withhold authorization of sales at the Newark Airport." The constriction of the issue before us is highlighted by the express concession by defendants that they are not concerned with the practice (emphasis by defendants) of the Port Authority under the statute, in the matter of such authorizations. The gist of the argument is that the statute itself is void as giving the Port Authority what is described as an absolute and unfettered "licensing power over a many-faceted area of trade and business," easily susceptible of arbitrary and discriminatory administration, citing Librizzi v. Plunkett, 126 N.J.L. 17 (Sup. Ct. 1940); Duff v. Trenton Beverage Co., 4 N.J. 595, 609 (1950).
The essence of the principle which defendants invoke is rationalized by Mr. Justice Heher in the Librizzi case, supra, as follows (126 N.J.L. at pages 21, 22):
"It is elementary that an ordinance which vests in local administrative officers an uncontrolled discretionary authority to grant such business license  it is not of the class of businesses that may be forbidden altogether  to one and to refuse it to another under like *236 circumstances contravenes fundamental law. Such is violative of the plainest principles of justice. It is a power that the municipal governing body itself does not possess. Keavey v. Randall, 1 N.J. Mis. R. 311; 122 A. 379; South Orange v. Heller, 92 N.J. Eq. 505. It is requisite that the regulation establish the terms and conditions upon which the right to the license is made to depend, and thus set down a general rule of action or standard of conduct governing the administrative tribunal. Unless the administrative officer be restrained by a definite, uniform rule of action, the regulation falls as a grant of arbitrary power in violation of the Fourteenth Amendment of the Federal Constitution. * * *"
Conceding the validity of the general principle thus expressed, in an appropriate setting, the State argues that the statute in question does not appertain to the field of regulation or licensing of business of any kind, but to the regulation of the operation by an interstate public agency of an enterprise having such distinctively proprietary or entrepreneurial aspects as render it appropriate that the agency be armed with the incidental power to perform its functions in the same efficient manner as would a private entity so engaged. This power, it is urged, reasonably includes the right to decide as a matter of business and administrative judgment, and on an individual basis, which and how many purveyors of food should be allowed on the terminal grounds and facilities, free of the legal necessity of passing upon applications for such admission upon the basis of general standards specified in a formal regulation or statute. The position of the Port Authority, as amicus curiae, is one of concurrence with the State to the effect that it possesses the powers thus described, but that they are valid entirely without regard to the nature of the operation of the agency as governmental or proprietary, the concession being freely advanced that its status and functions are classifiable as governmental.
The general character of the Port of New York Authority as a bi-state agency for promoting terminal, transportation and other facilities of commerce in and about the port of New York is so well known as not to require elaboration *237 here. The acquisition, development and operation of air terminals by the Port Authority is declared by L. 1947, c. 43 (N.J.S.A. 32:1-35.1) to be an interstate and regional problem and the integration thereof under the Port Authority to be in furtherance of state policy. The "effectuation, establishment, acquisition, construction, rehabilitation, improvement, maintenance and operation of air terminals" by the Port Authority is stated to constitute "an essential governmental function" of the cooperating states and to be "for the increase of their commerce and prosperity and for the improvement of their health and living conditions * * *." N.J.S.A. 32:1-35.4.
The labelling of specific functions of government as governmental or proprietary as an a priori criterion for the determination of the legal consequences of their operation in particular instances is not in general a serviceable technique. It is described as "illusory" by the Chief Justice in his opinion for the court in Washington Township in Bergen County v. Village of Ridgewood, 26 N.J. 578, 584 (1958), in relation to the question as to whether the municipal function of water supply should be subject to the operation of a zoning ordinance of another municipality. As to the same problem in relation to municipally operated airports, see Aviation Services v. Board of Adjustment of Hanover Tp., 20 N.J. 275, 280 (1956); cf. Township of Hanover v. Town of Morristown, 4 N.J. Super. 22, 24 (App. Div. 1949). However, in Cloyes v. Delaware Tp., 23 N.J. 324, 335, 336, 57 A.L.R.2d 1327 (1957), special policy considerations peculiar to municipal tort liability impelled the court to adhere to the ancient notion of the proprietary function as a criterion of the basis of liability notwithstanding that the Legislature had specifically denominated the activity (sewerage disposal plants) as governmental. Emphasis was there placed upon the necessity of inquiry as to the particular legal consequence sought to be impaled upon the spike of the characterizing label being contended for (e.g., expenditure or borrowing of public funds, condemnation, tort liability, *238 etc.). Thus, an activity of a political governmental unit may be considered as governmental for one or more legal purposes, yet become subject to legal implications in other respects under the influence of a proprietary aspect of its functions or operations, even though the Legislature has described the function as governmental. In a sense, this may be said of the factual situation before us here.
The legislative authorization of the specific functions with which the Port Authority is invested, and their reasonable characterization as governmental in the enabling legislation, undoubtedly would serve to repel any attack upon the validity of such legislatively granted incidents of the activity of the agency as condemnation of land, tax exemption and the like. Yet the nature of an air terminal as an integrated commercial enterprise is so functionally akin to that of a private business operation as to render it reasonable, in the interests of its efficient management, that the agency charged with its maintenance and operation be vested with many of the incidents of administrative control and direction which would be necessary or desirable were the enterprise under private management. This has been the uniform course of judicial approach to cognate problems in other states. Ex parte Houston, 93 Okl. Cr. 26, 224 P.2d 281 (Ct. App. 1950); Stone v. Police Jury of Calcasieu Parish, 226 La. 943, 77 So.2d 544 (Sup. Ct. 1954); Miami Beach Airline Service, Inc. v. Crandon, 159 Fla. 504, 32 So.2d 153, 172 A.L.R. 1425 (Sup. Ct. 1947). See also Ricotta v. City of Buffalo, 3 Misc.2d 625, 149 N.Y.S.2d 829 (Sup. Ct. 1954); Hertz Drive-Ur-Self System, Inc. v. Tucson Airport Authority, 81 Ariz. 80, 299 P.2d 1071 (Sup. Ct. 1956). Cf. City of Houston v. Jas. K. Dobbs Co. of Dallas, 232 F.2d 428, 430 (5 Cir. 1956). The general view applicable to airports operated by public agencies is that the agency must be held to have "all incidental powers * * * necessary to perform such functions in the same efficient manner as would a private person * * *." Stone v. Police Jury of Calcasieu Parish, supra (77 So.2d, at p. 547). *239 The typically recurrent problem in the cases cited is that of the selection by the operating agency of a single firm under contract or license to transport air passengers from the airport to a municipality, and the exclusion of all competitors from the airport premises. This kind of managerial prerogative is sustained as reasonably incident to the conduct of an efficient airport operation. In the case last cited a penal ordinance basically like the one before us here, but including limousine and taxi service, was involved, and the court rejected an attack mounted upon the ground of denial of equal protection of the laws  the same, in principle, as that underlying the present challenge.
The Legislatures of New York and New Jersey have envisaged and approved the exercise by the Port Authority of the widest range of managerial latitude in the field of air terminal operations, providing that the Authority should have "sole discretion" over "all details of financing, construction, leasing, charges, rates, tolls, contracts and the operation of air terminals * * * controlled by [it]" and that "its decision in connection with any and all matters concerning such air terminals shall be controlling and conclusive." N.J.S.A. 32:1-35.10. It would appear clear that the Legislature, in sanctioning the regulation in the Terminal statute here involved, was not purporting to be legislating in the field of licensing of purveyors of food, but in that of the efficient operation of an integrated, modern airport enterprise. The relationship between the absolute right on the part of the Port Authority management to control or prohibit the admission of food vendors at or on the terminal grounds and facilities, and the safe, orderly and efficient operation of the terminal in all its manifold aspects, is obvious. The smooth and convenient flow and handling of air passengers and the efficient functioning of airport and airline personnel and facilities clearly require close surveillance and full control by the Authority of all concessionaires and vendors of every type in and about the premises, and of their number, identity and disposition in and about the *240 terminal areas. The legal principles concerning norms or standards for the administrative regulation or licensing of businesses, trades or occupations, generally, are totally inapposite. We find the regulation in question and its confirmation by the Legislature reasonably necessary to execute a valid governmental object and therefore free of the constitutional infirmity attributed to it.

II.
Defendants argue that the possession by the defendant John Daquino of a state veteran's license vested in him, under N.J.S.A. 45:24-9, the right to conduct his business on the airport grounds notwithstanding the Terminal Act. This argument warrants no further comment than the observation that a later and specific statute prevails, where inconsistent, over an earlier, general enactment. State v. Hotel Bar Foods, Inc., 18 N.J. 115, 128 (1955). The defendant may, in the language of the act he relies upon, "hawk, peddle and vend" his merchandise elsewhere, but not at Newark Airport without authorization of the Port Authority. The rule of statutory construction referred to applies even in the field of veterans' preferences. See Ackley v. Norcross, 122 N.J.L. 569 (Sup. Ct. 1939), affirmed 124 N.J.L. 133 (E. & A. 1940).
We need not pass upon the added response to this contention, submitted by the State, that the veterans' licensing statute does not go beyond authorizing defendant to "hawk, peddle and vend," and therefore does not cover operations at a fixed location like a lunch wagon. Pevey v. Greenberg, 101 N.J.L. 435 (Sup. Ct. 1925); Shapiro v. City of Newark, 44 N.J. Super. 530 (Law Div. 1957).

III.
Defendants urge that the statutory language does not encompass in its specification of the loci wherein the *241 proscribed conduct is forbidden the area sub-leased by the Port Authority to Newark Air Service for its hangar, the place where the defendants assertedly violated the statute. They rely upon the rule of ejusdem generis, in application to the statutory prohibition of selling, etc. "in or upon any area, platform, stairway, station, waiting room or any other appurtenance of an air or bus terminal, owned or operated by the Port Authority," contending that the prohibited "areas" or "appurtenances," in this context, should be taken to mean areas or appurtenances of the same nature or character as platforms, stairways, etc., or adjacent to such. This argument was not made below and should have been so identified in the "Statement of Questions Involved." We will therefore not discuss it beyond saying that, in our judgment, it has no merit. Rules of statutory construction are but aids, not inflexible mandates for construction contrary to evident intent. The fair signification of the legislative language, in the light of its evident purpose, is to include in the prohibition every place within the entire air terminal where a vendor might attempt to ply his trade.

IV.
The other points made in defendants' brief were confessedly not urged below, and, for the reasons already indicated, will not be considered.
Judgment affirmed.
HANEMAN, J.A.D. (concurring).
I concur with the result attained by my colleagues on the constitutionality of N.J.S.A. 32:1-146.6, but not for the reasons they advance. I conceive that a resolution of whether Port Authority acts in a governmental or proprietary capacity in licensing vendors of merchandise is unnecessary to a determination of this matter  that actually under the facts and defendants' arguments we do not reach that problem.
*242 Defendants attack the constitutionality of the statutes (N.J.S.A. 32:1-146.6 and 32:1-146.7) on the ground that the former section contains an unconstitutional delegation of legislative power because no norm or standard is provided therein to guide the Port Authority in the administration of a licensing program and, therefore, denies them equal protection of the law.
Defendants did not raise this issue before the trial court and, ordinarily, would be barred from raising it for the first time on this appeal. However, in view of the public importance of that question we should relax the operation of the general rule and consider the projected issues. Salomon v. Jersey City, 2 N.J. 379, 386 (1953); Morin v. Becker, 6 N.J. 457 (1951).
The power of the Port Authority to adopt relevant regulations arises from and is circumscribed by the terms of R.S. 32:1-19, which reads:
"The port authority is hereby authorized to make suitable rules and regulations not inconsistent with the constitution of the United States or of either state, and subject to the exercise of the power of congress, for the improvement of the conduct of navigation and commerce, which, when concurred in or authorized by the legislatures of both states, shall be binding and effective upon all persons and corporations affected thereby."
The power to provide penalties for the violation of such regulations was not delegated to the Port Authority but was retained by the states. The pertinent legislation is R.S. 32:1-20, which reads:
"The two states shall provide penalties for violations of any order, rule or regulation of the port authority, and for the manner of enforcing the same."
L. 1953, c. 171, §§ 1 and 2 were enacted by virtue of these delegated and reserved powers. The first section of the statute grants legislative approval to a regulation of the Port Authority; the second creates a penalty and method for enforcing the regulation  a power which is *243 beyond that of Port Authority. The portion of that legislation pertinent to this appeal follows:
"The Port of New York Authority (hereinafter called the "Port Authority") having duly adopted the following rules and regulations, hereinafter set forth in this section, in relation to peddling, soliciting of business, entertaining, begging or loitering at, on or in air, bus or marine terminals operated by it within the territorial limits of the State of New Jersey, the penalties and procedures for its enforcement prescribed in section two shall apply to violations thereof.
(1) No person, unless duly authorized by the Port Authority, shall, in or upon any area, platform, stairway, station, waiting room or any other appurtenance of an air or bus terminal, owned or operated by the Port Authority, or in or upon any area, bulkhead, dock, pier, wharf, warehouse, building, structure, shed, waiting room or any other appurtenance of a marine terminal, owned or operated by the Port Authority:
(a) sell, or offer for sale any article of merchandise; * * *." (N.J.S.A. 32:1-146.6)
"Any violation within the State of these rules and regulations set forth in section one hereof shall be punishable by a fine not exceeding ten dollars ($10.00) or by imprisonment not exceeding thirty days, or by both such fine and imprisonment. Such a violation shall be tried in a summary way and shall be within the jurisdiction of and may be brought in the county district court, or any criminal judicial district court, municipal court, or existing police, magistrate's or recorder's court, in the county where the offense was committed. The rules of the Supreme Court shall govern the practice and procedure in such proceedings. Proceedings under this section may be instituted on any day of the week, and the institution of the proceedings on a Sunday or a holiday shall be no bar to the successful prosecution thereof. Any process served on a Sunday or a holiday shall be as valid as if served on any other day of the week." (N.J.S.A. 32:1-146.7)
It is somewhat difficult to follow the rationale of defendants' argument. They concede that the power to adopt a regulation of the general nature of that expressed in N.J.S.A. 32:1-146.6 is properly delegated to Port Authority by the compact between the States of New Jersey and New York, dated April 30, 1921, L. 1921, c. 151, p. 412, and the cognate statutes which deal comprehensively with the power and duties of Port Authority. See R.S. 32:1-1 to 32:1-174. They concede, as well, that the power to regulate sales on Port Authority property by means of licenses or *244 authorizations is properly delegated to Port Authority. They deny that they are attacking the actual practice or procedure of Port Authority in granting licenses or authorizations; that is, they do not attack the procedure followed by Port Authority on the ground that the action is capricious or arbitrary, or on the ground that defendants have been deprived of such license or authorization. They specifically decline to so argue. They argue, rather, that Port Authority could, under the statute, act in an arbitrary or capricious manner in granting or denying licenses. Thus, we are brought inescapably to the point raised on this appeal and our action is circumscribed by that issue. Defendants' argument, in fine, is that N.J.S.A. 32:1-146.6 is unconstitutional on the sole ground that there is absent therefrom any norm or standard to guide Port Authority in the granting of authorizations or the issuance of licenses.
Implicit in the admission that the power to license was properly delegated by the compact and the comprehensive legislation creating Port Authority, is a further admission that there exists in the general legislative enactments creating Port Authority a proper norm or standard by which Port Authority is guided in the exercise of its delegated power. This must follow, as without such norm or standard there could be no legal or proper delegation of power to license. It must logically follow from defendants' admissions and denials, that their position is that a proper standard must be repeated in the statute sub judice. Re-stated, defendants' argument is, essentially, that each statute establishing rules or regulations, adopted pursuant to R.S. 32:1-19, is a further delegation of power and must contain within itself proper norms or standards to guide Port Authority in the exercise thereof.
This argument is fallacious. First, each statute approving a regulation adopted pursuant to R.S. 32:1-19 is not a further delegation of power but merely evidences an exercise of power already delegated and is but a formalization of such delegated power. Defendants admit that the particular *245 regulation before us is one properly within the scope of the delegated powers. Second, the subject statute does not purport to create a regulation establishing a standard procedure for the issuance of licenses or authorizations. It is merely a prohibitory regulation which proscribes certain types of conduct, e.g., sales without a license. We are not confined to the four corners of N.J.S.A. 32:1-146.6 to ascertain whether there is a norm or standard covering the licensing. Where the power to license is validly delegated by other sections of companion statutes within the legislative scheme, and the purpose thereof is reasonably related to the purpose of those statutes, it is valid. Cf. Schierstead v. City of Brigantine, 20 N.J. 164, 169 (1955). Therefore, I would hold that the subject statutes are constitutional and that the determination of the issue of proprietary or governmental activity is unnecessary to a determination of the issue raised by this appeal.
I would affirm, but for the reasons hereinabove stated.