84 N.J. Super. 151 (1964)
201 A.2d 102
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEROLD KIRK, FRANK SCHOOLEY, CHARLES WADAS AND RAYMOND VICKNAIR, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided May 25, 1964.
*152 Mr. John J. Francis, Jr. argued the cause for plaintiff-respondent (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
Mr. Doane Regan argued the cause for defendants-appellants (Messrs. Rothbard, Harris & Oxfeld, attorneys).
GLICKENHAUS, J.C.C.
This matter comes before the court on appeal from a judgment in the Newark Municipal Court wherein defendants were convicted of trespassing in violation of N.J.S. 2A:170-31.
On Friday, July 12, 1963, at 2 P.M., defendants Kirk and Schooley, wearing signs relating to a strike of the Flight Engineers' Union against Eastern Air Lines, were parading side by side up and down in front of the Eastern Air Lines ticket counter in the main passenger waiting room in the passenger terminal building at Newark Airport. Newark Airport is owned by the City of Newark and on the date in question was under lease to and in the possession and control of the Port of New York Authority. The two men were approached by Vincent A. Carson, the Port Authority manager of the airport, and Port Authority officer Abbott. Mr. Carson identified himself to the defendants as the manager of the airport and advised defendants that their activities were not permitted within the terminal building and that they were trespassing therein. He specifically forbade them to continue their trespassing and directed them to leave the building. *153 They advised him that they had sought Port Authority permission to picket inside the building but that it had been denied; they were conducting their indoor picketing activity on the advice of counsel, and inquired as to the action which would be taken if they continued. He informed them that if they continued their parading and failed to comply with his direction to leave the building, he would request the police officer to arrest them on a charge of trespassing. They stated that they would not stop and were prepared to take the consequences of their defiance. They then resumed their parading. They continued to parade up and down in front of the Eastern Air Lines ticket counter for approximately ten minutes.
Police Officer Abbott, acting on the complaint of Carson, then placed defendants under arrest on a charge of trespassing in violation of N.J.S. 2A:170-31, which provides, inter alia:
"Any person who trespasses on any lands, * * * after being forbidden so to trespass by the owner, occupant, lessee or licensee thereof * * * is a disorderly person and shall be punished by a fine of not more than $50."
Defendants Wadas and Vicknair came upon the scene just prior to the arrest of defendants Kirk and Schooley. When defendants Kirk and Schooley were arrested, defendants Wadas and Vicknair took up the picketing activity. At approximately 2:30 P.M., Carson and Abbott approached defendants Wadas and Vicknair. Carson again identified himself as manager of the airport and advised these defendants that the parading activity was being conducted in an area in which such activity was not permitted by the Port Authority, and that they were trespassing therein. He forbade them to continue their activity indoors and directed them to leave the building, advising that they would be arrested as trespassers if they failed to leave. They advised him that they felt that they had a right to picket within the building. They refused to desist and continued to parade up and down in front of the Eastern Air Lines ticket counter. When they had continued for approximately ten minutes after the directions to cease *154 trespassing and leave the premises had been given by Carson, they were arrested on a charge of trespassing in violation of N.J.S. 2A:170-31.
The Port Authority had theretofore formally adopted certain rules and regulations for air terminals operated by it which were in full force and effect on the date of these events. Rule No. 2 provides:
"Any permission granted by the Port Authority directly or indirectly, expressly or by implication, to any person or persons to enter upon or use any air terminal or any part thereof (including aircraft operators, crew members and passengers, spectators, sightseers, pleasure and commercial vehicles, officers and employees of airlines, lessees and other persons occupying space at such air terminal, persons doing business with the Port Authority, its lessees, sublessees and permittees, and all other persons whatsoever whether or not of the type indicated), is conditioned upon compliance with the Port Authority rules and regulations; and entry upon or into any air terminal by any person shall be deemed to constitute an agreement by such person to comply with said rules and regulations; provided, however, that unless provision is made in a lease for application of said rules and regulations to the leased premises, such rules and regulations shall not apply to such leased premises."
Rule 98 establishes the various uses permitted in particular areas of Port Authority air terminals. Subparagraph (f) of that rule provides that the sidewalks and other portions of air terminal highways designated for pedestrian use may also be used for picketing in connection with labor disputes. Subparagraph (h) delineates the activities for which waiting rooms in passenger terminals are provided and may be used.
The State contends that defendants' activities were not conducted on a public street or thoroughfare or a place of public assembly, but rather indoors within a terminal building, which is provided solely for the purpose of transportation. Accordingly, the argument continues, defendants' activities were not in any way constitutionally protected. The State further contends that the continuance of picketing against the explicit oral communication of the prohibition to each of them constitutes conscious violation of N.J.S. 2A:170-31.
*155 Defendants, on the other hand, contend first that the factual and legal basis of the State's complaint consists of an alleged violation of Rule 98(h). They cite R.S. 32:1-19, 20 and N.J.S.A. 32:1-146.1 -146.2 in support of the argument that the Legislature has pre-empted the right to impose penalties for violation of Port Authority regulations. Thus, the argument continues, any attempt by the Port Authority to enforce its regulations by any means not sanctioned by legislative action must, of necessity, be unlawful. Secondly, the defendants contend that they have been denied their constitutional right of freedom of speech.
This court finds defendants' first contention to be without merit. The charge against defendants is a charge of trespass contrary to N.J.S. 2A:170-31. The rules and regulations adopted by the Port Authority (Rule 98(f), (h), Rule 2) are utilized by the State to demonstrate that manager Carson's direction to defendants to remove themselves from the premises was precisely in accord with the rules formally adopted by the Port Authority. Thus, it is not necessary to consider the defendants' argument that the Legislature has pre-empted the right to impose penalties for violations of Port Authority regulations.
The question presented in this case is whether the constitutional right of freedom of speech applies to a situation of this character and overrides the rights of the Port Authority to manage and control the air port terminal in the City of Newark. Hence, the court must determine whether the Port Authority is to be considered in the same classification as a private owner of property with respect to the conduct of airport facilities in the City of Newark.
State v. Daquino, 56 N.J. Super. 230 (App. Div. 1959), certification denied 30 N.J. 603 (1959), considers, at p. 236, fully the character of the Port Authority. The court notes that N.J.S.A. 32:1-35.4 states that the "effectuation, establishment, acquisition, construction, rehabilitation, improvement, maintenance and operation of air terminals" by the Port Authority constitutes "an essential governmental function" *156 of the cooperating states and is "for the increase of their commerce and prosperity and for the improvement of their health and living conditions." The court found, however, that "an activity of a political governmental unit may be considered as governmental for one or more legal purposes, yet become subject to legal implications in other respects under the influence of a proprietary aspect of its functions or operations, even though the Legislature has described the function as governmental." The court continued:
"* * * [t]he nature of an air terminal as an integrated commercial enterprise is so functionally akin to that of a private business operation as to render it reasonable, in the interests of its efficient management, that the agency charged with its maintenance and operation be vested with many of the incidents of administrative control and direction which would be necessary or desirable were the enterprise under private management. This has been the uniform course of judicial approach to cognate problems in other states. * * * The general view applicable to airports operated by public agencies is that the agency must be held to have `all incidental powers * * * necessary to perform such functions in the same efficient manner as would a private person * * *.' Stone v. Police Jury of Calcasieu Parish, supra, ([226 La. 943], 77 So.2d [544], at page 547)." (at p. 238; Cited cases omitted)
This court finds, therefore, that the operation and conduct of the airport facilities in the City of Newark by the Port Authority are akin to that of a private business operation. Thus, the Port Authority, in the same manner as a private owner of property, may protest and prosecute a trespass on its premises.
"* * * [I]nvitees come on to the premises by invitation, either express or implied; licensees are not invited, but their presence is suffered; trespassers are neither invited nor suffered. Lordi v. Spiotta, 133 N.J.L. 581, 584 (Sup. Ct. 1946); Snyder v. I. Jay Realty Co., supra, 30 N.J. 303 (1959)."
Williams v. Morristown Memorial Hospital, 59 N.J. Super. 384, 389 (App. Div. 1960). Accord, State v. Wouters, 71 N.J. Super. 479 (App. Div. 1962).
*157 In State v. Terwilliger, 49 N.J. Super. 149 (App. Div. 1958), the court held that defendants' entry into portions of the cemetery where graves were located to install markers, after the secretary of the association which had complete supervision with reference to monuments, markers, the planting of trees, etc., had ordered defendants to leave, could have been a violation of the statute providing that a trespassing person is a disorderly person, notwithstanding that defendants' original entry into the cemetery may have been lawful.
This court finds that when defendants entered the waiting room with the intention to picket after having been denied permission to do so, and did in fact picket in front of the Eastern Air Lines ticket counter, they were neither invitees nor licensees. They were in fact trespassers on the property and were so informed by manager Carson. This willful trespass by defendants was in direct contravention of N.J.S. 2A:170-31.
This court is aware of the fact that under certain circumstances picketing on private property has been held not to constitute a trespass. Courts of other states have so held with regard to picketing on sidewalks in front of establishments located in a shopping center privately owned. In this regard, the courts have weighed the constitutional rights of free speech of pickets and the constitutional rights of owners of private property. One of the elements considered, however, was the circumstance as to whether the rights of free speech could have been exercised in a manner so that it would not have been rendered ineffective to bring home the message sought to be imparted to the public. In other words, the courts balanced the "equities" as between the parties.
With the consent of both parties, this court has viewed the premises in question. The air terminal building has several front entrances. It was evident to the court that the defendants could have picketed on the sidewalk outside the waiting room at one or several of the entrances to the building. This alternative is not unrealistic or impractical to the point where the ability of the pickets to communicate would be at all impeded. *158 By picketing outside, neither the right of the pickets to express themselves freely nor the right of the Port Authority to maintain the premises for the conveniences of the traveling public would have been infringed upon.
The defendants are guilty as charged. It is obvious that the court had before it a test case. The defendants asserted that they were acting under instructions from their attorney. In view of this fact, sentence is suspended.