101 N.J. Super. 419 (1968)
244 A.2d 522
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DUKE E. MOORE, SR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1968.
Decided June 19, 1968.
*420 Before Judges GOLDMANN, KILKENNY and CARTON.
Mr. Bernard Rudd argued the cause for appellant (Messrs. Rudd, Ackerman, Breitkopf & Goodman, attorneys; Mr. Jerrold D. Goldstein, on the brief).
Mr. Alan Silber, Assistant County Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
The opinion of the court was delivered PER CURIAM:
Defendant was found guilty in the Newark Municipal Court of being a disorderly person, in violation of N.J.S. 2A:170-28, and was given a 60-day jail sentence (suspended), fined $52, and placed on probation for six months. He appealed to the Essex County Court. The matter was heard on the record made at the municipal court hearing, *421 and resulted in an affirmance. The present appeal followed.
N.J.S. 2A:170-28 provides:
"Any person who by noisy or disorderly conduct disturbs or interferes with the quiet or good order of any place of assembly, public or private, * * * is a disorderly person."
Defendant argues that he did not violate the statute because he was neither noisy nor disorderly. Additionally, he contends that his arrest and conviction as a disorderly person violated his constitutional rights of free speech and assembly.
The basic facts are not in dispute. On June 12, 1965 the Newark Planning Board held a public meeting in the city council chamber to determine whether a certain area of Newark was "blighted" and therefore eligible for an urban renewal program involving the construction of the New Jersey College of Medicine and Dentistry. Just prior to the opening of the hearing, board chairman Booker recognized defendant as floor manager for a majority of those in attendance. He also outlined the procedure that would govern the hearing.
At the time of the incident in question one George Richardson, who had been speaking for some time, had the floor. Miss Beverly Taylor arose for a point of information. Although the speaker agreed to yield for the purpose of entertaining the question, chairman Booker refused to permit the interruption. At this point defendant went to the microphone to quote Robert's Rules of Order as supporting Miss Taylor's request. The chairman ruled him out of order. When Moore continued with his reference to Robert's, the chairman again ruled him out of order, stating that Moore was not following the procedure set by the board for the hearing  the board was not using Robert's. Moore persisted in his efforts to explain what Robert's held, so that the chairman had to rule him out of order three more times.
Moore then said that he wanted to appeal the ruling to the entire board. Booker denied the request. Moore insisted that *422 the chair had no legal right to deny such an appeal, that he would not yield, and that "if you don't know parliamentary procedure, ask someone; that is the least you can do. Don't make a fool out of yourself and us, too. That is what you are doing." Booker asked him to take his seat, and when Moore continued he again informed him that he had been overruled. Moore persisted in saying he had a right to appeal the rulings of the chair, and this resulted in Booker's repeatedly requesting that he take his seat and that he yield the floor.
Booker's remarks were temperate but firm. When Moore said, "I am asking the chairman to disqualify himself for being mentally incompetent to sit in the chair as chairman," Booker replied, "We are going on. You are ruled out of order. You will have your opportunity to speak," and "Sir, if the chair is wrong, you will have your recourse. We have ruled that you are out of order."
Finally, the chairman asked that the microphone be cleared so that the meeting could proceed, a request three times repeated. When Moore did not relinquish the microphone, the chairman called a brief recess. Following the recess Moore resumed from where he had left off. When Booker again asked him to leave the microphone and ruled him out of order, Moore replied, "I would suggest that you are going to have to order that policeman, the police department to remove me." The minutes of the meeting show that a disturbance ensued, and Moore was led from the council chamber by a police officer who placed him under arrest.
The episode just described consumed from 12 to 15 minutes of the meeting, with Miss Taylor and a Harry Wheeler standing at the microphone and occasionally interposing remarks.
The policeman who took Moore from the council chamber testified at the municipal court hearing and described much of what has been detailed above. When Moore would not relinquish the microphone, the officer went up to him and told him that Booker was in charge of the meeting and that *423 he would have to comply with the chairman's directions. Moore maintained that he was in the right. The officer then said that he was leaving him with no alternative; if he persisted, he would have to remove him and probably arrest him. When Moore did not leave the microphone the officer said, "There is nothing else I can do," and asked Moore to accompany him. Moore offered no resistance.
The officer also testified that during the course of the controversy there was noise in the place, the meeting was disrupted, and when he removed Moore there was quite a bit of noise. The aisles had become congested when he went up to the microphone to speak to Moore, and as he was removing him from the council chamber the aisles became very congested. The chairman had at no time instructed him to arrest Moore.
All the testimony was to the effect that Moore was never noisy. However, the statute speaks of "noisy or disorderly conduct" which disturbs or interferes with the quiet or good order of an assembly. Moore's conduct clearly violated the statute; although he was not noisy, he certainly disturbed and interfered with the conduct of the hearing. His disregard of chairman Booker's repeated rulings and requests that he leave the microphone, his insistence upon his point of order, and the ad hominem remarks he addressed to the chair, disrupted the meeting to the point where the assembly became noisy, Miss Taylor and Wheeler joined in the dispute and, finally, those in the audience took to the aisles.
Although the facts in State v. Smith et al., 46 N.J. 510 (1966), certiorari denied 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966), are distinguishable from those in the present, what was said there points the way to our conclusion. Smith also involved a public hearing on a proposed urban development project, held by the governing body in the municipal council chamber. While a citizen was speaking against the proposal there was a disturbance in the area where defendant Callender was sitting, the second such occurrence. The council president called for quiet so that the *424 speaker might be heard and warned that otherwise he would have to ask the persons involved to leave or be removed. Callender answered, "We haven't started to disrupt your meeting yet," or "We haven't done anything yet." The president, understanding that "yet" carried a threat of further disturbance, directed a police officer to escort Callender from the room, whereupon Callender locked arms with someone seated next to him and went limp to the floor. He was taken out of the chamber and, as he lay in the corridor, his five co-defendants sat down around him, arms and legs intertwined. Callender was convicted in municipal court of violating N.J.S. 2A:170-28 and 29. His appeal to the County Court resulted in an affirmance. On further appeal he contended, among other things, that N.J.S. 2A:170-28 did not apply and, in any event, his behavior was protected by the First Amendment.
The Supreme Court held against him on both counts. True, Callender's resistance to the efforts to remove him interfered with the meeting in a degree somewhat greater than here. Nonetheless, defendant's persistence for almost a quarter of an hour in refusing to accept the rulings of the chair, or to leave the microphone and resume his seat, was such conduct as disturbed and interfered with the quiet and good order of the planning board hearing.
Although the Chief Justice spoke in Smith of Callender's physical resistance, what he said is applicable to this case: the decision of a chairman may not be tested by resisting his repeated rulings to bring order back into the meeting.
"* * * Government could not govern if its vital processes could thus be brought to halt. Again, no court would tolerate such interference with its proceedings; the need is the same in the legislative chamber, at the State and at the local level. The chair must have the power to suppress a disturbance or the threat of one * * *." (at page 517)
Dealing with Callender's claim that his behavior was protected by the First Amendment, the Chief Justice said:
*425 "Here there was no denial of an opportunity to protest. On the contrary the meeting was called to the very end of permitting all to have their say, for or against the urban redevelopment proposal. Callender was not denied a chance to be heard. Rather he was denied a right he seemingly claimed to interfere with the right of others to hear and be heard. He was not ordered removed because he expressed views which displeased the presiding officer. He was ordered out because, in response to the president's call for quiet, he threatened even greater disruption of this public meeting. Whether the forum be the courtroom or the chamber of the legislature itself or of a political subdivision of the State, there must be order. It is frivolous to suggest the First Amendment stands in the way of that imperative." (at pages 516-517)
Defendant relies on Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). As the Chief Justice observed in Smith, that case is distinguishable on its facts and can give a defendant like ours small comfort. The majority in Cox said:
"* * * The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. * * *" (379 U.S., at page 554, 85 S.Ct., at page 464, 13 L.Ed.2d, at page 484)
Although the facts in United States v. Woodard, 376 F.2d 136 (7 Cir. 1967), differ from those before us, it may appropriately be quoted as supporting defendant's conviction:
"* * * Public hearings of every character, executive, legislative, and judicial, are most often `public' as to physical presence, but not as to participation. As such, they must be conducted with decorum. If each spectator were privileged to shout or even speak at will, pandemonium would likely result. When, as here, activity engaged in by a spectator prevents the orderly continuation of the hearing, it falls within the prohibition of the statute. Cf., State v. Smith, 46 N.J. 510 * * *." (at pages 139-140)
Defendant's conduct violated N.J.S. 2A:170-28. It was not protected under the First Amendment. The judgment of conviction is affirmed.