110 N.J. Super. 528 (1970)
266 A.2d 175
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
VICTOR BESSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Union County Court, Law Division.
Decided May 27, 1970.
*531 Mr. Jack Wysoker, for defendant (Messrs. Mandell, Wysoker, Sherman, Glassner, Weingartner & Feingold, attorneys; Mr. Ronald S. Levitt, on the brief).
Mrs. Jean Lopatin, Assistant Prosecutor, for plaintiff (Mr. Karl Asch, Prosecutor of Union County, attorney).
STAMLER, N.F., J.C.C.
Defendant appeals to this court pursuant to R. 3:23-2 from the judgment of the Municipal Court of Roselle finding him guilty on two charges: (1) interfering with a school assembly contrary to N.J.S.A. 2A:170-28, and (2) trespass of school property, contrary to N.J.S.A. 2A:170-31.
*532 On the first charge defendant was sentenced to the Union County jail for a period of three months, such sentence being suspended and defendant placed on probation for a period of one year. On the second charge there was suspension of any fine that might have been imposed.
For the purposes of this opinion, the foregoing charges will be considered separately.

I
The facts with reference to the interference charge indicate that on January 14, 1970 defendant, a teacher on the faculty of the Abraham Clark High School in Roselle, was present at an assembly program to honor Dr. Martin Luther King. Previous to this date the board of education had denied a request to hang a particular mural in the high school. The nature of this mural, or the considerations leading to its rejection by the board, were not part of the record before this court. But during the course of the school assembly, immediately after the first guest, Father Salemi, had finished speaking, defendant suddenly stood up near the front of the auditorium and spoke several words to the effect of, "I'm leaving the building and won't return until the mural is hung." Defendant then walked to the rear and left the auditorium.
The effect that this outburst had on the assembly program is in sharp dispute. Witnesses for defendant, including one teacher, the mistress of ceremonies and other students testified that defendant spoke in a slow and deliberate manner; that there was some brief applause after he spoke, and that several students followed him out. There was no further disruption of the assembly.
In contrast, the three teachers who were witnesses for the State testified that defendant spoke loud enough for everyone in the auditorium to hear him; that as he left he made a motioning gesture with his hand, at which point a large number of students left the auditorium. One such *533 witness stated that several hundred students actually followed defendant out of the assembly. It is not disputed that the program did continue, and that a second assembly program was conducted without incident.
Defendant contends that his remarks were spontaneous and were uttered on the spur of the moment as a result of Father Salemi's talk. He urges that his remarks did not constitute such "noisy or disorderly conduct" as is contemplated by the statute. Further, he claims the statute is unconstitutional as violating defendant's First Amendment rights of free speech, if applied to convict him under the facts and circumstances herein. In support of this contention defendant argues that the statute is void for vagueness and being overly broad, in its lack of definite standards of enforcement.
N.J.S.A. 2A:170-28 provides as follows:
Any person who by noisy or disorderly conduct disturbs or interferes with the quiet or good order of any place of assembly, public or private, including schools, churches, libraries and reading rooms, is a disorderly person.
This court is convinced that defendant's conduct on January 14, 1970 resulted in the disturbance and interference with the quiet and good order of the school assembly. The record reveals that defendant had given a great deal of thought to the actions of the board of education in prohibiting the display of the mural; he had discussed this with others including his students. In short, this court finds that defendant's statements were not as spontaneous as he would have the court believe. Defendant is an experienced teacher, and as an intelligent person he must have known that the natural consequences of his actions would result in the disruption of the school program.
In State v. Smith, 46 N.J. 510 (1966), cert. den. 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966), defendant was arrested and charged with violating N.J.S.A. 2A:170-28 when he disrupted a city council meeting. The defendant had been creating a disturbance while others were speaking. He had *534 been warned twice to remain silent, and upon his threat of further disturbances, he was escorted from the chamber. The court noted that the disturbance was not the basis of the conviction. Rather, it was defendant's resistance to the efforts to remove him. By locking arms with the person next to him and "going limp," he demonstrated his intent to remain and eventually had to be carried out of the room.
In State v. Moore, 101 N.J. Super. 419 (App. Div. 1968), defendant was arrested and convicted as a disorderly person when he persisted for almost a quarter of an hour in refusing to accept the rulings of the chair at a public meeting, or to leave the microphone and resume his seat.
Defendant herein, by citing the above cases, notes that he was not guilty of refusing to keep quiet, or leaving when asked to do so, and hence did not frustrate the purpose of the assembly by preventing its continuance. The court finds such argument specious. The purpose of the statute in question is to insure that the good order and decorum of public assemblies will be preserved; that those in attendance may accomplish what they have set out to do without interference or disturbance.
In Burnside v. Byars, 363 F.2d 744 (5 Cir.1966), the court struck down a high school regulation prohibiting students from wearing "freedom buttons" as being arbitrary and unreasonable and an infringement upon the students' protected right of free expression where it did not appear to hamper the school in carrying out its regular schedule of activities. But where the record showed that an unusual degree of commotion, boisterous conduct, collision with the rights of others, and undermining of authority existed, the distribution of such buttons would be prohibited. Blackwell v. Issaquena County Board of Education, 363 F.2d 749 (5 Cir.1966).
Such was the situation that occurred at Roselle's Abraham Clark High School on January 14, 1970. There was commotion following defendant's remarks. Students left the auditorium and scattered throughout the building and *535 school grounds. Those present at the assembly were denied the right to enjoy an uninterrputed program.
The interest of the State in maintaining an educational system is a compelling one. Order is necessary to accomplish this, and the First Amendment cannot be used as a device to defeat such necessity. The court in State v. Smith, supra, noted that Cox v. Louisiana, 379 U.S. S36, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), rejected the notion that lawlessness may pass in the garb of a constitutional guarantee, and quoted from that case wherein it was said:
From these decisions certain clear principles emerge. The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. * * * [379 U.S. at 554, 85 S.Ct. at 464, 13 L.Ed. 2d at 484]
See also, Adderly v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966).
This court is aware that the First Amendment rights of freedom of speech and assembly are available to teachers and students within the schoolhouse as well as without; "they do not shed such rights at the schoolhouse gate." Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). But this court is equally concerned with the proper functioning of the school system. If defendant's conduct is to be permitted in this instance, then the school authorities must allow any other student or teacher to arise in any other assembly program and speak his mind. This cannot be tolerated. As stated in United States v. Woodard, 376 F.2d 136 (7 Cir.1967):
* * * public hearings of every character, executive, legislative, and judicial, are most often "public" as to physical presence, but not as to participation. As such, they must be conducted with decorum. If each spectator were privileged to shout or even speak at will. *536 pandemonium would likely result. When, as here, activity engaged in by a spectator prevents the orderly continuation of the hearing, it falls within the prohibition of the statute. Cf., State v. Smith, 46 N.J. 510 * * *." [at 139-140]
Finally, defendant's argument that the statute is unconstitutional, as being void for vagueness if applied to convict him under the facts of this case, is without merit. The statute is valid on its face and as applied herein, for the reasons enumerated in State v. Smith, supra, at 518-519.
Defendant is guilty of violating N.J.S. 2A:170-28. Accordingly, the judgment of conviction is affirmed.

II
With respect to the trespass charge, the facts are that on January 16, 1970, at approximately 8:15 A.M., defendant was in the rear of the school parking lot with a fellow faculty member, some parents and several students. They were conducting what was characterized by defendant as a "vigil of protest" against the actions of the board of education (as referred to above). Approximately one-half hour later defendant was advised by the school's principal that having been suspended the day before, he was trespassing and interrupting the educational program of the students who were in the parking lot, and that if he (defendant) did not leave within 15 minutes, the police would be summoned.
Defendant stated that he would leave in a few minutes, but that he would return at 1 P.M. At this point the principal again warned defendant, saying that if he did come back, and if he had students there, he would have him arrested.
At 1 P.M. defendant returned to the rear of the parking lot, again with some parents, one other teacher and several students (the exact number is in dispute, but it ranged between 20 and 30 students). At this point the police were called and defendant was placed under arrest and charged with violating N.J.S.A. 2A:170-31, which provides:
*537 Any person who trespasses on any lands, * * * after being forbidden so to trespass by the owner, occupant, leasee or licensee thereof * * * is a disorderly person and shall be punished by a fine of not more than $50.00.
It is not disputed that defendant and those with him were quiet and orderly. And further, that defendant remained standing in this one area of the parking lot, approximately 150 feet from the school building, never going into or out of said building.
The State contends that the school property is private in nature, with title vesting in the board of education. It is in this private capacity that the State, through its agents, is able to protect its property, and where an individual interferes with the use to which the property is lawfully dedicated a trespass charge will lie. Furthermore, in balancing the equities defendant's rights under the First Amendment must give way to the interests of the State in preserving the property under its control.
Defendant, on the other hand, contends that the property in question is public property; that, as such, there can be no trespass where an individual is in the exercise of his First Amendment rights thereon. Even if such property were to be labeled "private," defendant should nevertheless be permitted to partake in the conduct here involved. Lastly, he argues that the selective and discriminatory manner in which he alone was singled out for arrest was an attempt to restrict the exercise of his First Amendment right of free speech; that the absence of clearly defined and limiting standards in N.J.S.A. 2A:170-31 render the statute void for vagueness and for being overly broad, if applied under these circumstances and against this defendant only.
In determining whether the defendant violated the trespass law of this State (N.J.S.A. 2A:170-31) the court must thus decide to what extent the school property here involved is public in nature, and whether the State may prohibit the conduct in question without violating defendant's constitutional rights of free speech and assembly.
*538 N.J.S.A. 18A:20-1 provides:
The title to the property, real and personal, of each school district, and the title to all property, real and personal, which shall be acquired for school purposes in the district, is vested and shall vest in the board of education of the district * * * and the board shall have the supervision, control and management of all such property.
There is no question but that under this statute the board of education has title to the school property, giving it the right to possession and control of same. However, it does not have such complete dominion over its property as would a private individual over land which he owns in fee. This is so because the members of the public are, in effect, the board of education; they support the institution and its property, and they are entitled to the benefits derived therefrom. 78 C.J.S. Schools and School Districts § 259, at 1236.
The ownership of school property is in the local school board as trustee for the public at large. Such property occupies the status of public property of the school district by which it is held or wherein it is located. 47 Am Jur., Schools. § 65, at 342.
As such, the school board has the right  the duty  to protect the property and the educational processes from any disturbance or interference. But this obligation must be balanced against the right of the public to enter thereon for lawful and legitimate purposes. See Tinker v. Des Moines Community School District, supra.
It is the opinion of this court that school property is of such public character that a mere entry thereon cannot, in and of itself, constitute a trespass. Black's Law Dictionary (4th ed.), at 1674, defines trespass as "(A)n unlawful act committed with violence, actual or implied, causing injury to the person, property, or relative rights of another." It is a serious charge, and although a trespass does not become lawful because it was done with good intention, Taylor v. Borgfeld, 139 N.J. Eq. 177 (Ch. 1947), where the property involved *539 is at least in some respects public in nature, and the First Amendment rights of an individual are in issue, the court has a duty to look at the total circumstances.
Labelling the school parking lot here as "public property" does not mean, of course, that it may be used for any purpose at any time.
As stated in Adderly v. Florida, supra:
There may be some public places which are so clearly committed to other purposes that their use for the airing of grievances is anomalous. There may be some instances in which assemblies and petitions for redress of grievances are not consistent with other necessary purposes of public property. A noisy meeting may be out of keeping with the serenity of the statehouse the quiet of the courthouse. No one, for example, would suggest that the Senate gallery is the proper place for a vociferous protest rally. And in other cases it may be necessary to adjust the right to petition for redress of keeping with the serenity of the statehouse or the quiet of the public property is normally put. See Poulos v. New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1952).
Thus, if defendant's actions were to take place within the confines of the school building, they would be treated by this court in a much different manner  as was the case with the interference charge, supra. This would be so regardless of whether the school building was to be considered "public" or "private." We are concerned here, however, with the sidewalks, parking lots and other "grounds" of such institutions, and they are to be considered in a different light. See State v. Kirk, 84 N.J. Super. 151 (Law Div. 1964), aff'd 88 N.J. Super. 130 (App. Div. 1965); Amalgamated Food Employees Union Local 590 v. Logon Valley Plaza, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed. 2d 603 (1968).
This court finds that defendant's presence in the parking lot on January 16, 1970 did not constitute a trespass. His actions and conduct were confined solely to one area of the school's parking lot; he and the others with him were quiet and peaceful. There were several students at his side, but they were not asked to leave their classes; they came of their own volition. This court is not unmindful of the conduct, *540 quite often violently vicious and deliberately disruptive, that presently exists on our campuses and in our streets. The conduct here in question may have caused some slight inconvenience to those who may have been in the area, but this is not enough to deny defendant his right to be there. Cox v. Louisiana, supra. This court cannot find that defendant's conduct interfered with the normal use to which such property is ordinarily put by the school district.
The issue before this court has not been decided on the grounds that defendant was singled out for arrest in an attempt to restrict the exercise of his First Amendment rights. A trespass charge certainly could not lie against the students or the other teacher in defendant's presence who had not as yet been suspended. That parents standing in the vicinity were not arrested is not sufficient grounds to absolve defendant from any wrongdoing if his conduct were to be viewed as such.
Similarly, defendant's contention that the statute is void for vagueness is without merit. This court finds the statute constitutional and relies on the reasoning given in State v. Smith, supra.
Accordingly, the judgment of conviction with respect to the trespass charge is reversed.