[Nos. 42282, 42316. En Banc. June 7, 1973.]

WASHINGTON STATE SCHOOL DIRECTORS ASSOCIATION *et al.,* *Appellants,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

WASHINGTON ASSOCIATION OF REALTORS, INC., *et al.,* *Appellants,* v. WILLIAM JACOBS *et al., Respondents.*

*Carney, Stephenson, Siqueland, Badley & Smith,* by *Milton C. Smith, Lee, Smart, Cook, Dunlap & Biehl,* by *Nelson T. Lee, Karr, Tuttle, Koch, Campbell, Mawer & Morrow,* by *Charles A. Kimbrough* and *Llewellyn G. Pritchard, Jon G. Schneidler,* and *Douglas J. Smith,* for appellants.

*Slade Gorton, Attorney General,* and *Gomer L. Cannon, Assistant,* for respondents.

*Critchlow, Williams, Ryals & Schuster,* by *Rembert Ryals,* amicus curiae.

HUNTER, J.—These are consolidated cases in which the plaintiffs appeal from a judgment of the Thurston County Superior Court denying them injunctive relief in a declaratory judgment proceeding. The plaintiffs are seeking a permanent injunction barring the defendants (respondents), Department of Labor and Industries, from enforcing the provisions of RCW 51.04.010 *et seq.* (Laws of 1971, 1st Ex. Sess., ch. 289) against the plaintiffs.

The plaintiffs (appellants) in case No. 42316 are the Washington Association of Realtors, Inc. The plaintiffs (appellants) in case No. 42282 include corporations, associations or other organizations operated for profit. They also include nonprofit organizations authorized under the laws

of this state to operate hospitals, nursing homes, or engage in other activities.

During trial the parties agreed that the two, cases might be consolidated for the purposes of the trial court's decision. They stipulated that because of the importance of the basic state policy involved, as well as the substantial segment of the population affected, the trial court should decide their causes as requests for a declaratory judgment and permanent injunction, rather than as a motion for a preliminary injunction. In addition, they stipulated that the trial court should make determinations as to questions of law, without deciding questions of fact.

The controversy in these cases centers around the comprehensive revision of the workmen's compensation act of 1971. Under the new act (RCW 51.04.010 *et seq.*) coverage is extended to include virtually all employment within the state.[1] Formerly, the coverage was limited to specific industries in which the employment was deemed extrahazardous. The former act did not require coverage for the employments involved in this action.

The trial court declined to rule that the new act is unconstitutional, stating in essence that it must pass the question of the constitutionality of the act to the Supreme Court unless it could find beyond a reasonable doubt that the act is unconstitutional. Due to the similarity of issues in these two cases they were consolidated on appeal, and we treat the contentions of each party as if raised by all parties although they were argued separately before this court.

We affirm the decision of the trial court and find the act to be constitutionally valid.

[1] RCW 51.12.020 excludes the following from the mandatory provisions of the act: Domestic servants in a private home where the employer has less than two employees employed 40 hours per week; those employed to do gardening, maintenance, repair, remodeling or similar work for less than 10 consecutive days in or about a private home; those persons engaged to do casual work which is not in the ordinary course of business; sole proprietors and partners; persons performing services for charitable or religious organizations in return for aid or sustenance; and agricultural employees earning less than $150 a year from any one employer.

The plaintiffs' first contention is that the title of the 1971 act does not comply with the requirements of article 2, section 19, of our state constitution. They argue that the title to the act does not put them on notice that the industrial insurance is extended in the act to virtually all areas of employment within the state. We disagree.

Article 2, section 19 of the state constitution provides:

No bill shall embrace more than one subject, and that shall be expressed in the title.

The purposes of this constitutional provision are: to protect and enlighten the members of the legislature; to apprise the people generally concerning the subjects of the legislation being considered, and to prevent hodge-podge or logrolling legislation. *Rourke v. Department of Labor & Indus.*, 41 Wn.2d 310, 249 P.2d 236 (1952). Const. art. 2, § 19 is to be liberally construed so as not to impose awkward and hampering restrictions upon the legislature. *Kueckelhan v. Federal Old Line Ins. Co.*, 69 Wn.2d 392, 418 P.2d 443 (1966).

In *State v. Lounsbery*, 74 Wn.2d 659, 664, 445 P.2d 1017 (1968), we quoted *Treffry v. Taylor*, 67 Wn.2d 487, 491, 408 P.2d 269 (1965), with approval, for the test of the sufficiency of a title as being:

[T]hat it must give notice of its object so as reasonably to lead to an inquiry into its contents. (Citing cases.) The title to an act may be general, and all matters incidental or germane thereto may be written into the body of the law. (Citing cases.)

The title of the 1971 act reads: "AN ACT Relating to industrial insurance; amending . . ." and then lists over two pages of specific sections, chapters, and laws relating to the industrial insurance act.

The magnitude of the changes in the act are reflected in listing of numerous sections, laws and chapters which were affected by the new act. The term "industrial insurance," itself, is an extremely broad concept. *See Webster's Third New International Dictionary* (1971). The totality of the terms of the title then are of such a nature that one is on

notice that it may contain provisions involving the regulation of insurance coverage in almost any endeavor where one may find an employer/employee relationship. This is particularly true in light of the history of the application of the industrial insurance act in this state. We have consistently held under the previous act which was limited to extrahazardous endeavors that the test of the application of the industrial insurance act was whether the employer's business had been classified as extrahazardous *regardless of the fact of hazard. See Department of Labor & Indus. v. McLain,* 66 Wn.2d 54, 401 P.2d 211 (1965), and the cases cited therein. Thus all employers were on notice when the legislature changed the act, that they should check to see if the changes affected them.

The plaintiffs next contend, in essence, that the mandatory coverage provided by the act is an unreasonable exercise of the state's police power constituting a denial of due process of the law in violation of both the Washington State Constitution and the United States Constitution.

■ ■ We have heretofore held that the providing of insurance to afford quick and certain relief, irrespective of fault to injured workmen, constitutes a reasonable exercise of the police power. *See State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 P. 1101 (1911), and *State v. Mountain Timber Co.,* 75 Wash. 581, 135 P. 645 (1913), *aff'd,* 243 U.S. 219, 61 L. Ed. 685, 37 S. Ct. 260 (1916).

The plaintiffs argue, however, that the above mentioned cases dealt with our statute when it pertained to extrahazardous employments only, and that the present act requires coverage of virtually all employment regardless of whether any hazard, in fact, exists in the industry. The reasoning of the above mentioned cases still applies. There is hazard in all industry. The secretary who trips and falls over a piece of carpet is as injured and in need of the coverage provided by the act as is the workman in the lumber mill who trips and falls. A broken arm is the same wherever it is sustained. As the United States Supreme

Court said in *Ward & Gow v. Krinsky*, 259 U.S. 503, 66 L. Ed. 1033, 42 S. Ct. 529, 28 A.L.R. 1207 (1921), on page 524:

> Accidents cannot be relied upon to follow the symmetrical lines of group description; . . . Even clerks and salesmen cannot, in this busy day, be confidently treated as immune from industrial hazards; if a general rule must be declared, it would be safer to say, on the basis of experience, that no occupation is free from industrial hazard, than to say that any specified occupation is free. . . . the legislature may have realized . . . what indeed is proverbial, that accidents do not conform to types; that they are one thing that happen "simply because" —they *are* accidents.

(Citation omitted.)

The legislature has recognized that there is an inherent hazard in all industry. RCW 51.12.010. It has designed our act to cope with such hazards in such a way as to give quick and speedy relief to those who are injured during their employment regardless of fault. We stated in the *Clausen* case on page 195, that if

> the act in controversy has a reasonable relation to the protection of the public health, morals, safety or welfare, it is not to be set aside because it may incidentally deprive some person of his property without fault or take the property of one person to pay the obligations of another. To be fatally defective in these respects, the regulation must be so utterly unreasonable and so extravagant in nature and purpose as to capriciously interfere with and destroy private rights.

We find the new act to be particularly reasonable in light of the high costs of medical treatment and the effect such costs have on the average person. As we stated in the *Clausen* case, the concept that losses from injuries should be borne by industry and its consumers, rather than by injured workmen themselves, by their dependents or by the state, is economically, sociologically and morally sound.

One of the major arguments advanced by the plaintiffs in this area is that the legislature improperly declared certain occupations to be extrahazardous. However, in 1972, the legislature amended the industrial insurance act to de-

lete the references to extrahazardous occupations. This argument then has become academic. This court does not review purely academic questions. *Grays Harbor Paper Co. v. Grays Harbor County,* 74 Wn.2d 70, 442 P.2d 967 (1968), and the cases cited therein.

The plaintiffs next contend, in essence, that since the 1971 act requires insurance of virtually all employees within the state, and also requires the insurance be placed through the defendant, it creates a monopoly in violation of article 12, section 22 of our state constitution.

■ Assuming arguendo that the act does create a monopoly, it still would not be in violation of article 12, section 22 of our state constitution. Const. art. 12, § 22 is not applicable to the state. *Uhden, Inc. v. Greenough,* 181 Wash. 412, 43 P.2d 983, 98 A.L.R. 1181 (1935); *Griffiths v. Robinson,* 181 Wash. 438, 43 P.2d 977 (1935); and *State ex rel. Northwestern Elec. Co. v. Superior Court,* 28 Wn.2d 476, 183 P.2d 802, 173 A.L.R. 1351 (1947). *See also Insurance Co. of N. America v. Kueckelhan,* 70 Wn.2d 822, 425 P.2d 669 (1967).

As we indicated in *Uhden, Inc. v. Greenough, supra,* Const. art. 12, § 22 is designed to prevent combinations of persons, or associations, for the purpose of fixing the price or limiting the production of products or commodities with the end result being a private monopoly against the public welfare. The provision does not apply to the state if it should determine to establish or foster a monopoly for the advantage of the people.

■ The plaintiffs argue, however, that even if the above cited cases are deemed controlling, the policy expressed in the constitutional provision prohibiting monopolies should apply to the point of requiring a showing by the state of the necessity for the exercise of the police power in this form, when viewed in light of the less drastic means for achieving the same basic purpose with private insurance. This argument, and the arguments raised by the plaintiffs as to the lack of need for this particular type of legislation, should be addressed to the legislature. The wis-

dom, necessity or expediency of a legislative enactment is not subject to judicial review. *Petstel, Inc. v. County of King,* 77 Wn.2d 144, 459 P.2d 937 (1969); *Treffry v. Taylor,* 67 Wn.2d 487, 408 P.2d 269 (1965).

The plaintiffs also contend that the provisions of the 1971 act are unconstitutional because they limit self-insurers to large employers and confer a special privilege on that class of employer. We disagree.

The provision in question is RCW 51.14.020, which provides:

(1) An employer may qualify as a self-insurer by establishing to the director's satisfaction that he has sufficient financial ability to make certain the prompt payment of all compensation under this title and all assessments which may become due from such employer.

(2) A self-insurer may establish sufficient financial ability by depositing in an escrow account in a depository designated by the director, money and/or corporate or governmental securities approved by the director, or a surety bond written by any company admitted to transact surety business in this state filed with the department. The money, securities, or bond shall be in an amount reasonably sufficient in the director's discretion to insure payment of reasonably foreseeable compensation and assessments but not less than the employer's normal expected annual claim liabilities and in no event less than one hundred thousand dollars. In arriving at the amount of money, securities, or bond required under this subsection, the director shall take into consideration the financial ability of the employer to pay compensation and assessments and his probable continuity of operation. The money, securities, or bond so deposited shall be held by the director to secure the payment of compensation by the self-insurer and to secure payment of his assessments. The amount of security may be increased or decreased from time to time by the director. The income from any securities deposited may be distributed currently to the self-insurer.

(3) Securities or money deposited by an employer pursuant to subsection (2) of this section shall be returned to him upon his written request provided the employer files the bond required by such subsection.

(4) If the employer seeking to qualify as a self-insurer has previously insured with the state fund, the director shall require the employer to make up his proper share of any deficit or insufficiency in the state fund as a condition to certification as a self-insurer. (5) A self-insurer may reinsure a portion of his liability under this title with any reinsurer authorized to transact such reinsurance in this state: *Provided,* That the reinsurer may not participate in the administration of the responsibilities of the self-insurer under this title. Such reinsurance may not exceed eighty percent of the liabilities under this title.

■ Basically, these qualifications require only that the employer establish to the director's satisfaction that he has sufficient ability to make the payments that might be required of him, and he may do this by depositing money, securities, or a bond in an amount deemed reasonably sufficient, but not less than one hundred thousand dollars. The purposes of these provisions are evident; they are designed to insure that workmen entitled to benefits under the act will receive them. In *State v. Persinger*, 62 Wn.2d 362, 382 P.2d 497 (1963), we stated on page 368:

It is recognized that classifications must be made and that in making them, dividing lines must be drawn some place. Thus, the question is not whether there is in fact some discrimination, but rather whether the discrimination is justified.

Neither the equal protection clause nor the privileges and immunities clause requires perfection in legislative classification. Within the limits of the restrictive rules that have been enumerated, the legislature has a wide measure of discretion in designating classifications. A statutory enactment cannot be successfully attacked unless the discrimination or inequality produced by the particular classification is manifestly arbitrary, unreasonable, inequitable and unjust.

When a statutory classification is challenged, if any state of facts reasonably can be conceived that will sustain it, there is a presumption that such facts exist. The burden is upon the one who assails the classification of showing that it fails to rest upon any reasonable basis and is essentially arbitrary.

(Citations omitted.) *See Markham Advertising Co. v. State,* 73 Wn.2d 405, 439 P.2d 248 (1968); *Sparkman & McLean Co. v. Govan Inv. Trust,* 78 Wn.2d 584, 478 P.2d 232 (1970); and *Caughey v. Employment Security Dep't,* 81 Wn.2d 597, 503 P.2d 460 (1972).

We believe the required deposit was conceivably necessary to carry out the purposes of the act in the event the employer elects to conform with self-insurer provisions; that it therefore rests upon a reasonable basis and is not arbitrary.

The plaintiffs argue, however, that it is invidious discrimination to require them to post a minimum security deposit which in effect is in exchange for the privilege of reinsuring 80 percent of their insurance risk with a private insurance carrier. We believe this argument misconstrues the requirements of RCW 51.14.020. The minimal security requirement of subsection (2) is one of the requirements for qualification as a self-insurer. The provision of subsection (5) permitting an otherwise qualified self-insurer to reinsure up to 80 percent of his liability is an option which the self-insurer may or may not exercise. In any event, the argument is a nonsequitur in view of our holding that the $100,000 security deposit requirement is constitutionally sound.

The plaintiffs further argue that there is no reasonable basis for limiting the privilege of reinsuring with a private carrier to 80 percent of their insurance risk. It is conceivable that the 80 percent limitation was designed to insure that private insurance companies in no way interfere with the administration of the quick and speedy relief afforded under the act. Subsection (5) must therefore be sustained. *See State v. Persinger, supra,* and cases cited thereafter. Furthermore, it has long been established in this jurisdiction that the legislature can constitutionally limit the use of private insurance carriers in the area of industrial insurance. *See State v. Mountain Timber Co.,* 75 Wash. 581, 135 P. 645 (1913), *aff'd,* 243 U.S. 219, 61 L. Ed. 685, 37 S. Ct. 260 (1916). Those questions raised as to the

wisdom of the 80 percent limitation on reinsurance should be addressed to the legislature.

The plaintiffs also contend that the imposition of the assessments, pursuant to RCW 51.32.073, amounts to a retroactive taxation and thus is in fact a deprivation of property without due process of law. RCW 51.32.073 provides:

> Each employer shall retain from the earnings of each workman that amount as shall be fixed from time to time by the director, the basis for measuring said amount to be determined by the director. The money so retained shall be matched in an equal amount by each employer, and all such moneys shall be remitted to the department in such manner and at such intervals as the department directs and shall be placed in the supplemental pension fund. The moneys so collected shall be used exclusively for the additional payments prescribed in RCW 51.32.070 and shall be no more than necessary to make such payments on a current basis.

The plaintiffs argue that the above provision requires them to contribute to a deficit in the state fund, which amounts to a retroactive taxation. This argument is without merit. The plaintiffs are not required to pay into this fund until after they come under the provisions of the act and the assessments are the same for all other employers. The employees of the defendants partake of the benefits of this provision just as those under the coverage of the act, prior to its recent amendment, partake of it. The creation of a special fund, sustained by employers and employees, to accomplish the objectives of the legislation rather than the use of general funds supported by all taxpayers, is within the legislative prerogative, economically sound and socially desirable. There are no prior vested rights or contracts of the plaintiffs that are impaired by reason of the tax; there are no moneys being used that were paid in by the plaintiffs for other purposes; there is no constitutional prohibition against the legislature increasing the pensions of prior pensioners; and the legislative power in this respect is unlimited in view of the 1958 amendment to article 2, section 25 of our constitution.

In *Luders v. Spokane,* 57 Wn.2d 162, 165, 356 P.2d 331 (1960), we said:

> The 1958 amendment to Art. II, § 25, removed the constitutional barrier precluding increasing police pensions after grant thereof. The legislative power in this respect is now unlimited.

■ Moreover, we note that the language of the statute itself does not convey an intent to impose a retroactive tax. It speaks to the future only. Language expressed in the present and future tense as in the instant case manifests an intent that the act shall apply prospectively only. *Anderson v. Seattle,* 78 Wn.2d 201, 471 P.2d 87 (1970).

■ Furthermore, as the *Clausen* case indicates, the charges laid via the industrial insurance act are in return for the privilege of carrying on the particular endeavor and the charges may be imposed for the purposes of revenue to sustain the objectives of the act without being a deprivation of property.

The plaintiffs further contend that the basic purpose of the 1971 act is revenue raising and that the act requires them to contribute to an existing deficit in violation of many of their constitutional rights.

■ The plaintiffs argue that under the new act they are liable for the depletion of the accident fund for accidents happening in classes other than their own. In other words, their premiums must help to pay the costs of insurance for those in risk categories other than their own. They base this argument upon the repeal of RCW 51.16.020 and RCW 51.16.010 in 1971, and the enactment of RCW 51.16.035, which provides:

> The department shall *classify all occupations or industries in accordance with their degree of hazard* and fix therefor basic rates of premium which *shall be the lowest necessary to maintain actuarial solvency* of the accident and medical aid funds *in accordance with recognized insurance principles.* The department shall formulate and adopt rules and regulations governing the method of premium calculation and collection and *providing for a rating system consistent with recognized principles of*

*workmen's compensation insurance* which shall be designed to stimulate and encourage accident prevention and to facilitate collection. The department may annually, or at such other times as it deems necessary to maintain solvency of the funds, readjust rates in accordance with the rating system to become effective on such dates as the department may designate.

(Italics ours.) Formerly, under RCW 51.16.020 and RCW 51.16.010, the department was directed that no class should be liable for the depletion of the accident fund for accidents happening in other classes. It was also directed that the industries should pay in proportion to the amount of expense they created as a result of injuries in their particular field. Those industries encountering high accident rates would pay more than those industries encountering lower accident rates. Thus, the rates were based on the amount of risk involved in the particular class, in accordance with recognized insurance principles. We detect no real change in the basic legislative scheme. The new statute merely requires that the department classify all occupations or industries in accordance with their degree of hazard and fix rates that shall be the lowest necessary in accordance with recognized insurance principles. Implicit within the very wording of RCW 51.16.035 is the concept of rates being charged according to the degree of hazard involved within the various classes. Recognized insurance principles require such a concept. Acts calling for classification according to risk have been consistently upheld. *See State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 P. 1101 (1911); *State v. Mountain Timber Co., supra;* and *Ward & Gow v. Krinsky,* 259 U.S. 503, 66 L. Ed. 1033, 42 S. Ct. 529, 28 A.L.R. 1207 (1921).

 The plaintiffs argue, however, that the legislature has delegated its legislative power to tax in violation of the state constitution. This argument is without merit. We stated in *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 500 P.2d 540 (1972), on page 159 that:

[T]he delegation of legislative power is justified and con-

stitutional, and the requirements of the standards doctrine are satisfied, when it can be shown (1) that the legislature has provided standards or guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it; and (2) that *procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power.*

The 1971 act clearly meets these requirements. RCW 51.16.035, *supra,* provides standards or guidelines which define in general terms what is to be done and who is to do it. The department is to classify all occupations or industries in accordance with their degree of hazard and fix the basic rates or premiums in accordance with recognized insurance principles. Procedural safeguards to control arbitrary administrative action exist in the review procedures of RCW 51.52 and RCW 34.04. We are satisfied then that the challenged legislative power is valid and constitutional.

Finally, the plaintiffs contend that even if the act is not unconstitutional, the trial court nevertheless erred in failing to grant an injunction because the defendant seeks to impose premiums which are not in compliance with the directive of the act.

The plaintiffs have not demonstrated that they made any attempt to comply with the administrative procedures designed in RCW 51.52 and RCW 34.04. We stated in *Sunny Brook Farms v. Omdahl,* 42 Wn.2d 788, 793, 259 P.2d 383 (1953), that:

> When an adequate administrative remedy is provided by statute, relief must be sought by exhausting that remedy before the courts will act. We have recognized the doctrine of exhaustion of remedies in *State ex rel. Shomaker v. Superior Court,* 193 Wash. 465, 476, 76 P. (2d) 306; . . . The doctrine involves a policy of orderly procedure which favors a preliminary administrative sifting process. This is particularly true when the issue presented involves technical matters peculiarly within the competence and special skills of an administrative authority.

(Citations omitted.)

Therefore, the trial court did not err in refusing to grant the requested injunction. If, in fact, the premiums charged the plaintiffs are excessively high in violation of the act, their relief must be sought through the defendant prior to seeking assistance of the courts.

We have considered all the arguments raised by the different parties in these consolidated cases, and deem them to be answered in our disposition of the contentions discussed in this opinion.

The judgment of the trial court in refusing to grant the requested injunction is affirmed.

HALE, C.J., FINLEY, ROSELLINI, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied August 23, 1973.