[No. 43510.   En Banc.   July 24, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. DENNIS RAY MARTINEZ, *Appellant*.

*Norman Rosenberg* of *Spokane County Legal Services*, for appellant.

*Arthur R. Eggers, Prosecuting Attorney,* and *Jerry A. Votendahl, Deputy,* for respondent.

FINLEY, J.—Defendant Dennis Ray Martinez was charged with and convicted of vagrancy pursuant to RCW 9.87.010(13). Defendant appeals and contends that the statute is (1) void for vagueness; (2) unconstitutionally overbroad; and (3) violative of equal protection.

Defendant was suspended from high school on approximately September 24, 1973, and ordered not to return unless accompanied by his parents. No formal hearing was held prior to or subsequent to the suspension. However, on October 9, defendant informed the assistant principal that he did not intend to return to school.

Subsequent to October 9, defendant was observed upon school property and warned not to return during school hours. However, on November 8, defendant returned to the school during school hours to speak with another student, apparently concerning possible employment in a musical combo. Defendant did not seek permission from the school administration to speak with the student but, instead, went directly to the "study hall" where the other student was located. Upon seeing the defendant, the assistant principal summoned police who arrested defendant and cited him for vagrancy, pursuant to RCW 9.87.010(13)[1] which provides as follows:

---

[1]This provision now appears in subsection 11 of RCW 9.87.010 rather than in subsection 13. This change was occasioned by the fact that the legislature has repealed certain portions of the vagrancy statute.

9.87.010 Vagrancy. Every—

. . .

(13) Person, except a person enrolled as a student in or parents or guardians of such students or person employed by such school or institution, who without a lawful purpose therefor wilfully loiters about the building or buildings of any public or private school or institution of higher learning or the public premises adjacent thereto—

Is a vagrant, and shall be punished by imprisonment in the county jail for not more than six months, or by a fine of not more than five hundred dollars.

There is no indication or finding of fact that the defendant's activities caused a material disruption of the classroom or of the educational process.

Before proceeding to the merits of defendant's constitutional challenge, one procedural matter raised by the State must be considered, *viz.*, it is argued that this court has no jurisdiction of the case because defendant did not file a timely notice of appeal within 30 days after entry of judgment as required by ROA I-46(b)(1) and CAROA 46(b)(1). This 30-day requirment is jurisdictional. *State v. Miller*, 67 Wn.2d 59, 406 P.2d 760 (1965); *Snohomish v. Patric*, 56 Wn.2d 38, 350 P.2d 1009 (1960). The judgment was entered on July 18, 1974, and the notice of appeal was filed on August 19, 1974. According to the State, this is a period of 32 days and, thus, the notice of appeal was untimely. However, the State's computation is erroneous because it fails to follow the mandates of ROA I-9 and CAROA 9. These rules provide that in computing a time period within which an act is to be completed, the first day is to be excluded, the last day is to be included, and if the last day is a Saturday, Sunday, or holiday, then the act must be completed on the next business day. Thus, in the instant case, the computation should begin on July 19 and the 30th day falls on August 17, which is a Saturday. Therefore, defendant had until Monday, August 19, to timely file the notice of appeal and he did so at that time.

Hence, this court has jurisdiction over the case and we must consider the merits of defendant's constitutional arguments.

The constitutionality of RCW 9.87.010(13) was first considered by this court in *State v. Oyen*, 78 Wn.2d 909, 480 P.2d 766 (1971), *vacated*, 408 U.S. 933, 33 L. Ed. 2d 745, 92 S. Ct. 2846 (1972). Defendants there argued that in proscribing loitering "without a lawful purpose," the provision was both vague and overbroad. However, this court construed the term "without a lawful purpose" to embrace those who enter upon school premises or the public places adjacent thereto without legitimately related school purposes. As construed, this court held that the provision was not impermissibly vague, was not unconstitutional as applied, and was not unconstitutionally overbroad. The United States Supreme Court vacated and remanded this decision for reconsideration in light of *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 33 L. Ed. 2d 212, 92 S. Ct. 2286 (1972) and *Grayned v. Rockford*, 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972). Both *Grayned* and *Mosley* invalidated on equal protection grounds statutes that prohibited nonlabor picketing near schools but that allowed labor picketing near schools. Also at issue in *Grayned* was the constitutionality of a statute regulating noise near schools, but it was upheld as against claims that it was impermissibly vague and overbroad. On remand, this court did not reconsider the merits of *Oyen* but instead entered a supplemental judgment and remanded the case to the Superior Court for Whatcom County for reconsideration. No further proceedings in *Oyen* were had in this court.

■ A vacation of a lower court judgment is essentially a neutral disposition. It constitutes neither an affirmance nor a reversal on the merits. But it does nullify—in a neutral manner—the judgment and earlier proceedings that transpired in the court from which the appeal was taken. *See DeFunis v. Odegaard*, 84 Wn.2d 617, 529 P.2d 438 (1974) (Finley, J., concurring in part, dissenting in part). As such, the effect of the vacation by the Supreme Court of

our decision in *Oyen* was to nullify or remove the construction that we had therein placed upon RCW 9.87.010(13). Therefore, in the instant case, we must consider anew the facial validity of RCW 9.87.010(13) and, if necessary, we must then determine whether a limiting construction may reasonably be placed upon the statute to save it from any possible vagueness and/or overbreadth.

Defendant's first argument is that RCW 9.87.010 (13) is void for vagueness. In assessing this claim, the touchstone for our analysis is the due process clause which commands that the prohibitions of a penal statute be clearly drawn and defined as to standards of guilt. There are essentially two independent reasons for the requirement of specificity in penal statutes. First, due process requires that citizens be afforded fair notice as to what conduct is forbidden. Second, explicit standards are necessary in order to prevent arbitrary arrests and convictions resting simply on the "unfettered discretion" of the police, judges, and juries. *Papachristou v. Jacksonville*, 405 U.S. 156, 168, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972). *See also Grayned v. Rockford, supra; United States v. Harriss*, 347 U.S. 612, 98 L. Ed. 989, 74 S. Ct. 808 (1954); *Lanzetta v. New Jersey*, 306 U.S. 451, 83 L. Ed. 888, 59 S. Ct. 618 (1939); *Thornhill v. Alabama*, 310 U.S. 88, 84 L. Ed. 1093, 60 S. Ct. 736 (1940).

We start with the proposition that "[p]rima facie, mere . . . loitering on a public way is lawful and the right of any man, woman, or child." *Commonwealth v. Carpenter*, 325 Mass. 519, 521, 91 N.E.2d 666, 667 (1950). Our prior cases make clear that a statute which simply proscribes "loitering" is impermissibly vague because the word loiter standing alone does not necessarily connote sinister or illegal activity and, thus, the ordinary citizen will be uninformed as to what types of behavior will and will not be subject to criminal prosecution. *Seattle v. Pullman*, 82 Wn.2d 794, 514 P.2d 1059 (1973); *Seattle v. Drew*, 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967). Nearly

all courts are in accord and hold statutes unconstitutional which purport to punish loitering per se. Note, 4 Harv. Civ. Rights-Civ. Lib. L. Rev. 275, 276 (1968).

Therefore, RCW 9.87.010(13) can be held constitutional only if it contains additional qualifying language so that arbitrary arrests are not encouraged and so that the average citizen will be apprised of what types of acts are proscribed. In RCW 9.87.010(13), the place of the proscribed loitering is made reasonably clear, *i.e.*, on school premises or on public premises immediately adjacent thereto. Likewise, the class of persons prohibited from so loitering is defined. Finally, the type of loitering proscribed is denominated as "wilful." But all trespass itself is not proscribed by RCW 9.87.010(13). Hence, these additional qualifiers obviously fail to apprise an individual of the circumstances under which "wilful loitering" on school premises or on the public premises adjacent thereto is subject to punishment. *Cf. Ex parte Mittelstaedt*, 297 S.W.2d 153 (Tex. Ct. Crim. App. 1956).

■ The only qualifier that conceivably lends certainty to RCW 9.87.010(13) is that only loitering "without a lawful purpose" is prohibited. However, our recent decision in *Bellevue v. Miller*, 85 Wn.2d 539, 544-45, 536 P.2d 603 (1975) makes clear that grounding the decision to arrest an individual upon the supposed absence or presence of a lawful purpose is constitutionally impermissible: ·

> A determination of whether particular activity manifests an unlawful purpose or creates alarm is entirely dependent upon a police officer's opinion, not only with respect to what conduct the ordinance prohibits, but also with respect to the suspected import of the activity observed. Such extravagant police discretion is plainly improper. . . . Legislation which purports to define illegality by resort to such inherently subjective terms as "unlawful purpose" or "alarm" permits, indeed requires, an *ad hoc* police determination of criminality. Such legislation is vague because there can be no prior notice of what conduct an individual officer will find sufficiently suspicious to warrant arrest. The potential for arbitrary and

discriminatory law enforcement under such legislation cannot constitutionally be tolerated.

In *Papachristou v. Jacksonville, supra,* the Supreme Court likewise made clear that such a provision cannot withstand constitutional scrutiny. In striking down a statute which prohibited, *inter alia,* "wandering or strolling from place to place without any lawful purpose or object" the court commented cryptically: "The qualification 'without any lawful purpose or object' may be a trap for innocent acts." *Papachristou v. Jacksonville, supra* at 164. Numerous other cases have similarly invalidated statutes purporting to prohibit loitering without a lawful purpose or business. *See Balizer v. Shaver,* 82 N.M. 347, 481 P.2d 709 (1971) (loitering on or near school premises without lawful business); *State v. Grahavac,* 52 Hawaii 527, 480 P.2d 148 (1971) (wandering about streets without lawful business); *United States v. Kilgen,* 431 F.2d 627 (5th Cir. 1970) (wandering from place to place without lawful purpose); *Portland v. James,* 251 Ore. 8, 444 P.2d 554 (1968) (unlawful to roam upon streets or public places without lawful purpose).

Therefore, we think it plain that RCW 9.87.010 (13) must be held void for vagueness unless a more precise construction can be placed upon it which would adequately apprise an ordinary citizen of the types of behavior prohibited. In this regard, we recognize, of course, that if a term can be made definite by a reasonable construction, courts will usually narrowly construe it and uphold the statute. *United States v. Harriss, supra; State v. Dixon,* 78 Wn.2d 796, 479 P.2d 931 (1971). But while we may undertake to construe a *term* or phrase in a statute, we will not attempt wholesale revision or redrafting of a statute in order to uphold it. *Bellevue v. Miller, supra.*

The State urges that the statute can be rendered sufficiently precise by construing the term "without a lawful purpose" to proscribe entry upon school premises or public premises adjacent thereto unless there is a legitimately related school purpose for such entry.

We adopted the State's proposed construction in *State v.*

*Oyen, supra,* because we concluded that demonstrations, leafletting, et cetera, on the streets and sidewalks surrounding schools were not constitutionally protected by the First Amendment. Primary reliance was placed—by analogy—upon *Adderley v. Florida,* 385 U.S. 39, 17 L. Ed. 2d 149, 87 S. Ct. 242 (1966), which held that a demonstration upon the premises of a city jail was not constitutionally protected. At that juncture in the development of First Amendment doctrine, the only case explicitly considering the role of the First Amendment within the context of the school environment was *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969). *Tinker* held that the wearing of armbands in high schools by students is constitutionally protected expressive activity which can be restricted only if it "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Tinker v. Des Moines Independent Community School Dist., supra* at 513. But in *State v. Oyen, supra,* this court held that the potentially broad rationale of *Tinker,* which would allow curtailment of First Amendment freedoms on school premises only if there occurred a *substantial disruption* of classroom activities, was applicable only to students and not to those unassociated with the school community.

The most recent pronouncement from the Supreme Court grappling with the delicate task of accommodating First Amendment interests with the unique characteristics of the educational environment makes clear that our prior interpretation of *Tinker* was excessively narrow. Thus, in *Grayned v. Rockford, supra* at 121 n.49, the court indicated in plain terminology that schools are not to be analogized to jails for purposes of determining whether First Amendment freedoms may be asserted on school premises. More importantly, the court affirmatively enunciated at least the minimum rights of members of the general public to engage in expressive activity on the streets and sidewalks adjacent to schools:

Just as *Tinker* made clear that school property may not be declared off limits for expressive activity by students, we think it clear that the public sidewalk adjacent to school grounds may not be declared off limits for expressive activity by members of the public. But in each case, expressive activity may be prohibited if it "materially disrupts classwork or involves substantial disorder or invasion of the rights of others."

*Grayned v. Rockford*, 408 U.S. 104, 118, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972).

In short, the general public has, at the minimum, the right to engage in expressive activity on the streets and sidewalks surrounding schools, at least if material disruption of the classroom is not occasioned thereby.

Moreover, some expressive activity, assuming it is not disruptive of the educational process, may be constitutionally protected on the campus itself depending upon such considerations as whether the expression is to occur on a large college campus or a smaller secondary school, and whether the activity is to take place within the confines of a building or on the areas of the campus open generally to the public. *See Grayned v. Rockford, supra* at 120 n.45[2]; *Jones v. Board of Regents*, 436 F.2d 618 (9th Cir. 1970) (right to distribute handbills on college campus); *New Times, Inc. v. Arizona Bd. of Regents*, 110 Ariz. 367, 519 P.2d 169 (1974) (right to sell newspapers on college campus); *State v. Besson*, 110 N.J. Super. 528, 266 A.2d 175 (1970) (right of teacher to hold "vigil of protest" in school parking lot). *See also Grody v. State*, 278 N.E.2d 280 (Ind. 1972); Wright, *The Constitution On The Campus*, 22 Vand. L. Rev. 1027 (1969); Comment, *The University And The Public: The Right Of Access By Nonstudents To University Property*, 54 Cal. L. Rev. 132 (1966).

---

[2]The court commented as follows:

"Different considerations, of course, apply in different circumstances. For example, restrictions appropriate to a single-building high school during class hours would be inappropriate in many open areas on a college campus, just as an assembly that is permitted outside a dormitory would be inappropriate in the middle of a mathematics class." *Grayned v. Rockford, supra* at 120 n.45.

Therefore, it is patent that we cannot acquiesce in the State's exhortations to us to save RCW 9.87.010(13) from vagueness by construing it to prohibit all entry upon school grounds or adjacent public places without school related purposes. Such a blanket prohibition from school premises and the public premises adjacent thereto, without consideration of the nature of the campus involved, the precise location of the expressive activity, and the extent, if any, of the disruption thereby caused, is simply inconsistent with *Grayned v. Rockford, supra.* As such the State's proposed construction would serve only to chill constitutionally protected behavior and therefore, would render the statute substantially overbroad. It would obviously be improvident for us to place an overbroad construction on a statute in order to save it from vagueness.

No other alternative constructions have been offered by the State which would simultaneously save the statute from vagueness and accommodate First Amendment protected activity. Nor are we able to perceive any adequate constructions that reasonably could be superimposed upon the statute without attempting a wholesale revision of it. This, of course, we decline to do because drafting statutes is a legislative and not a judicial function. *Bellevue v. Miller, supra.* Therefore, we hold that RCW 9.87.010(13) is void for vagueness.

Even were we to adopt the State's proposed construction to save RCW 9.87.010(13) from vagueness, the statute would nevertheless be an intolerable denial of equal protection of the law.

Employing the State's proposed construction of RCW 9.87.010(13), the statute would create two general classifications. The first general classification is composed of all those excepted from the prohibitions of the statute and includes four subcategories: (1) students; (2) parents or guardians; (3) school employees; and (4) those who have legitimate school related purposes. The other general classification is composed of all other citizens. The criminal sanc-

tions of the statute are applicable only to this latter classification.

The State contends that the defendant's activities in the instant case do not present a substantial First Amendment question. The State appears to argue that the validity of the above classifications, therefore, must be evaluated by the rational basis test and not by the strict scrutiny test that is traditionally applicable when First Amendment rights are involved. Assuming arguendo, without deciding, that the strict scrutiny test is inapplicable to this case because the defendant himself did not engage in protected First Amendment activity,[3] we are nevertheless convinced that RCW 9.87.010(13) cannot withstand even the less severe review demanded by the rational basis test.

In the past 3 years, the rational basis test has undergone a striking and profound metamorphosis. *See generally* Gunther, *Foreword: In Search Of Evolving Doctrine On A Changing Court: A Model For A Newer Equal Protection*, 86 Harv. L. Rev. 1 (1972). In contrast to prior years when the Supreme Court accorded extreme deference to statutory schemes and the classifications therein, unless of course a fundamental right or suspect classification was at issue, the court has of late evinced a marked willingness to strike down dubious classification schemes even when the rational basis test is employed. *See, e.g., Reed v. Reed*, 404 U.S. 71, 30 L. Ed. 2d 225, 92 S. Ct. 251 (1971); *James v. Strange*, 407 U.S. 128, 32 L. Ed. 2d 600, 92 S. Ct. 2027 (1972); *Jimenez v. Weinberger*, 417 U.S. 628, 41 L. Ed. 2d 363, 94 S. Ct. 2496 (1974); *Eisenstadt v. Baird*, 405 U.S. 438,

---

[3]This is essentially a question of standing to assert the rights of others. However, even given the premise that one's own behavior is not constitutionally protected, it does not necessarily follow that such a person is barred from arguing that the statute is unconstitutional because of its infringement on the rights of others. *Eisenstadt v. Baird,* 405 U.S. 438, 31 L. Ed. 2d 349, 92 S. Ct. 1029 (1972). *See also* Sedler, *Standing To Assert Constitutional Jus Tertii In The Supreme Court,* 71 Yale L.J. 599 (1962); Note, *The First Amendment Overbreadth Doctrine,* 83 Harv. L. Rev. 844 (1970). Unfortunately, the point has escaped meaningful analysis in the briefs.

31 L. Ed. 2d 349, 92 S. Ct. 1029 (1972); *Jackson v. Indiana*, 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845 (1972); *Stanton v. Stanton*, 421 U.S. 7, 43 L. Ed. 2d 688, 95 S. Ct. 1323 (1975).

■ The new approach to the rational basis test focuses upon the question of whether the means are sufficiently related to the ends sought to be achieved by the statute in question. Certain cases may arise where the older minimal level of scrutiny is still appropriate, as where the issue involves the alleged inequality of expenditures of finite resources in social welfare programs. *See, e.g., Dandridge v. Williams*, 397 U.S. 471, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970), and the explanation thereof in *Jimenez v. Weinberger, supra*. But here the interest is more substantial since it involves a penal statute with the ultimate sanction of incarceration. Under such circumstances, the invigorated rational basis test as exemplified in *Reed v. Reed, supra*; *Stanton v Stanton, supra*, et cetera should be employed. The essence of this test is that a classification must rest upon some difference that has a *fair and substantial* relation to the object or purpose of the legislation.

The State contends that the purpose of RCW 9.87.010 (13) is to prevent disturbances and disruption of the educational environment and that those people exempted from the prohibitions of the statute have a prima facie interest in the academic community. Apparently, the State is arguing that the people exempted are not likely to be disruptive, whereas, those unassociated with the school are likely to be disruptive; hence, the classification scheme is rational and constitutional.

However, we cannot blithely assume that employees and parents will not be disruptive but that everyone else will be. "Predictions about imminent disruption . . . involve judgments appropriately made on an individualized basis, not by means of broad classifications, . . ." *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 100-01, 33 L. Ed. 2d 212, 92 S. Ct. 2286 (1972). Indeed, both experience and common sense demonstrate the untenability of

an assumption that outsiders will be disruptive but that parents and teachers will not.

For instance, teacher strikes and concomitant picketing on or around the school premises are far from unknown. *Mead School Dist. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 140, 530 P.2d 302 (1975). Yet, even if such picketing becomes violent and disruptive of the educational environment, the teachers will be immune from punishment under RCW 9.87.010(13). Numerous other employees of the school, *e.g.*, maintenance workers, could similarly strike, engage in picketing disruptive of the academic atmosphere but, nevertheless, they would rest assured that they would not be prosecuted under RCW 9.87.010(13). Likewise, there are innumerable volatile issues—such as mandatory bussing or sex education—which could quite understandably excite the passions of parents and induce them to air their grievances and present their viewpoints by picketing on or near school premises. Even if such picketing is disruptive of the educational environment or violent, the parents are immunized from prosecution by the terms of RCW 9.87.010(13). In short, rather than preventing disturbances, the statute actually transforms school grounds into a sanctuary for numerous activities that could substantially impinge upon and disrupt the educational environment.

In addition, under the construction proposed by the State, RCW 9.87.010(13) would sweep within its prohibitions and unnecessarily criminalize a vast array of activities that are unquestionably nondisruptive of the academic atmosphere, *e.g.*, leafletting, *Jones v. Board of Regents, supra*, selling newspapers, *New Times, Inc. v. Arizona Bd. of Regents, supra*, or even a senior citizen enjoying a Hemingway novel on a university campus bench. Rendering these activities subject to punishment irrespective of whether they cause disruption while, at the same time, immunizing disruptive conduct by parents and teachers is sheer irrationality and resultant discrimination which cannot be countenanced under the equal protection clauses of the Washington and federal constitutions.

In short, we think it plain that the classifications established in RCW 9.87.010(13) are not substantially related to the statute's ostensible purpose of preventing disruption in the schools. Therefore, we hold RCW 9.87.010(13) is an unconstitutional deprivation of equal protection of the law.

In invalidating RCW 9.87.010(13) we are not oblivious to the valid interest of schools in maintaining order. Indeed, we think it plain that a statute could be drafted to prohibit and criminalize activities that substantially interfere with and disrupt the educational process. *Cf. People v. Witzkowski*, 53 Ill. 2d 216, 290 N.E.2d 236 (1972); *State v. Silva*, 86 N.M. 543, 525 P.2d 903 (1974). But any such statute must comport with constitutional requirements, *i.e.*, it must be precise; it must not substantially impinge upon protected First Amendment activity; and it must treat alike persons who are similarly situated.

Since RCW 9.87.010(13) does not meet these constitutional requirements, the judgment against the defendant must be reversed. It is so ordered.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, J., concur.