[No. 45891.   En Banc.   November 15, 1979.]

*In the Matter of the Personal Restraint of*
Jennifer Powell, *Petitioner.*

*Robert Adelman* of *Institutional Legal Services,* for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Catherine Lee Campbell, Deputy,* for respondent.

WILLIAMS, J.—Petitioner Powell has brought a personal restraint petition challenging the legality of her detention based on a conviction for possession of a controlled substance. She also seeks to have her probation arising from a previous conviction for forgery reinstated. We find petitioner's conviction on the drug possession charge to be unconstitutional, and we therefore grant the petition in that cause. However, it is our conclusion that petitioner is lawfully restrained on the forgery conviction, and we grant no relief as to the latter cause.

The background and facts of the case can be summarized briefly as follows:

Pursuant to RCW 69.50.401–.410, which is part of the Uniform Controlled Substances Act, the possession, manufacture and delivery of controlled substances with intent are prohibited acts. The statutory maximum penalty for the crime at issue here, possession of a controlled substance, is 5 years' imprisonment, or a $10,000 fine, or both. RCW 69.50.401(c). Prior to October 13, 1977, the drug Dalmane (flurazepam) had been determined to be a controlled substance. This court on that date ruled in *State v. Dougall*, 89 Wn.2d 118, 570 P.2d 135 (1977), that the method by which certain drugs were designated controlled substances pursuant to RCW 69.50.201(d) was unconstitutional. That statute permitted additions to the state's controlled substances list through incorporation of additions to the federal controlled substances schedule. The court ruled that the statute failed to give sufficient notice of the conduct forbidden, stating that "the question is whether a person of common intelligence can, with reasonable certainty, determine what substances are designated or rescheduled as controlled substances" under the statute. *State v. Dougall, supra* at 121. The court concluded that

[i]t is unreasonable to expect an average person to continually research the Federal Register to determine what drugs are controlled substances under RCW 69.50.

*Dougall,* at 122.

As a result of the *Dougall* decision, all drugs which had been adopted as controlled substances pursuant to RCW 69.50.201(d) lost their status as controlled substances. Consequently, on October 31, 1977, the State Board of Pharmacy promulgated an emergency regulation which rescheduled Dalmane, among other drugs, as a Schedule IV controlled substance. WAC Bulletin No. 181, at 3 (October 15, 1977–October 31, 1977).[1] The emergency rule making was done pursuant to RCW 69.50.201(a), which allows the State Board of Pharmacy (board) to add substances to be included within the Uniform Controlled Substances Act pursuant to the rule–making procedures of RCW 34.04. The general provisions of RCW 34.04 direct that an agency give at least 20 days' notice of its intended action and that it afford interested persons reasonable opportunity to submit their views. *See* RCW 34.04.025. RCW 34.04.030, however, authorizes the promulgation of emergency rules without compliance with such notice and public comment procedures. It directs only that the rules include a statement of reasons for the finding of emergency and that such rules be filed with the Code Reviser as provided by RCW 34.04.040. RCW 34.04.040(1) and (2) provide, in part:

(1) . . . The code reviser shall keep a permanent register of such rules open to public inspection.

(2) *Emergency rules adopted under RCW 34.04.030 shall become effective upon filing.* All other rules hereafter adopted shall become effective *upon the expiration of thirty days after the date of filing,* unless a later date is required by statute or specified in the rule.

(Italics ours.)

Aside from the permanent register which is open to the public in the office of the Code Reviser, the only notice regarding promulgation of emergency regulation appeared

---

[1]On November 17, 1977, the Board of Pharmacy adopted the rule pursuant to regular procedures and filed it on December 9, 1977, thus limiting the effect of the emergency rule to the period October 31, 1977 through January 8, 1978. WAC Bulletin No. 181 (October 15, 1977–October 31, 1977); *see* RCW 34.04.040(2) and WAC 360–36–130.

in a monthly bulletin distributed by the office of the Code Reviser pursuant to the then RCW 34.04.050. The entry in the bulletin indicated that an emergency regulation had been promulgated by the board on October 31, 1977,

> [r]egulating the substances subject to the controlled substances act by adding and rescheduling certain named substances, amending WAC 360–36–100. Adding as new sections WAC 360–36–110, –120, –130, –140, and –150.

WAC Bulletin No. 181, at 3 (October 15, 1977–October 31, 1977).

The bulletin did not specify which drugs had been rescheduled or give the substantive content of the emergency regulations.[2]

Petitioner was arrested and charged with possession of Dalmane during the pendency of the emergency regulations. She pleaded guilty and was given a 5–year sentence. At the same time, her probation arising from a previous forgery conviction was revoked, and petitioner was sentenced to 5 years on the forgery conviction to run concurrently with the other sentence.

At the outset, we find that petitioner is not entitled to her requested remedy of release from custody. Petitioner claims that if she had not been unlawfully convicted of drug possession, her probation from the forgery charge would not have been revoked. We do not agree.

Contrary to petitioner's contention, the record indicates that petitioner's probation was revoked for reasons independent of her conviction on the drug charge. Indeed, a bench warrant had issued for petitioner's arrest because of the violation of the terms of her probation prior to her arrest for possession of Dalmane. In his order revoking

---

[2]It may be noted that effective January 1, 1978, the Code Reviser was authorized to publish a monthly *register* which replaced the former bulletin. By this register the Code Reviser shall "set forth the text of all rules filed during the preceding month excluding rules in effect upon the adoption of this chapter[,]" RCW 34.04.050(2), although the Code Reviser may in his discretion omit the text of unduly cumbersome rules if made available by the adopting agency. *See* RCW 34.04.050(3).

probation, the trial judge stated a number of reasons for revoking probation, all of which were related solely to the previous violation of conditions of probation. The trial judge did not include the drug possession charge or conviction as one of the reasons for revoking probation. We therefore conclude that petitioner is lawfully restrained due to her forgery conviction.

■ Before dealing with the question of whether petitioner's conviction for possession of a controlled substance is constitutional, we must determine whether a prisoner bringing a personal restraint petition is entitled to relief when she is lawfully restrained under a concurrent sentence. Pursuant to RAP 16.3(a), relief formerly available by a writ of habeas corpus is now available by way of a personal restraint petition. A number of jurisdictions will not consider an application for such relief if the appellant will not be released from confinement because he is also held on a separate and valid conviction other than the one under attack. *See People ex rel. Malinowski v. Casscles,* 53 App. Div. 2d 954, 385 N.Y.S.2d 640 (1976); *In re Bryant,* 129 Vt. 302, 276 A.2d 628 (1971); *Frazier v. Langlois,* 103 R.I. 607, 240 A.2d 152 (1968). On the other hand, other jurisdictions will consider an application for relief as to an invalid sentence, even though the petitioner remains detained by virtue of other sentences. *See State ex rel. Jackson v. Henderson,* 260 La. 90, 255 So. 2d 85 (1971); *Frizzell v. State,* 238 So. 2d 67 (Fla. 1970); *Atkins v. Hopper,* 234 Ga. 330, 216 S.E.2d 89 (1975).

It is our opinion that release from confinement is no longer the sole function of the writ of habeas corpus. *See Atkins v. Hopper, supra; see also Carafas v. LaVallee,* 391 U.S. 234, 20 L. Ed. 2d 554, 88 S. Ct. 1556 (1968). We note that an unlawful conviction can serve as a restraint on liberty due to collateral consequences affecting one adjudged to be a habitual criminal. *See* RCW 9.92.090 and RCW 9.92.100. An unlawful conviction also serves as a restraint on liberty due to its effect on the parole process and potential effect on future minimum sentences and actual time

served. It further creates difficulties for a former prisoner attempting to reestablish himself or herself with society upon release from prison. Habeas corpus relief can "serve to relieve the stigma and burden of an invalid sentence regardless of its position in relation to other sentences." *Atkins*, at 333. This view of habeas corpus seems consistent with RAP 16.4(b), which states that

> [a] petitioner is under a "restraint" if the prisoner has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to imminent confinement, *or the petitioner is under some other disability resulting from a judgment or sentence* in a criminal case.

(Italics ours.) Therefore, we deem it appropriate to consider petitioner's claim that her restraint arising from the drug conviction is unlawful even though she must serve a lawful concurrent sentence.

Petitioner states two reasons why her conviction for the possession of Dalmane was unconstitutional. First, she contends that the procedure by which Dalmane was designated as a controlled substance afforded inadequate notice and thereby violated her due process rights. Second, she claims that the statute constitutes an unlawful delegation of legislative authority under Const. art. 2, § 1. We find merit in both contentions.

We agree with petitioner's contention that the procedure by which Dalmane was designated as a controlled substance afforded inadequate notice. We have traditionally required that citizens be given fair notice of conduct forbidden by penal statutes. *See State v. Jordan*, 91 Wn.2d 386, 588 P.2d 1155 (1979); *State v. Dougall*, 89 Wn.2d 118, 570 P.2d 135 (1977); *State v. Martinez*, 85 Wn.2d 671, 538 P.2d 521 (1975); *Seattle v. Pullman*, 82 Wn.2d 794, 514 P.2d 1059 (1973). This court recently restated the rule that "[s]tatutory language must convey a sufficiently definite warning of proscribed conduct when measured by common understanding and practice." *Jordan*, at 389. *See State v. Dougall, supra.* We find the notice of

this regulation provided in this case to be even more deficient than that provided under the statute in *Dougall.* In *Dougall,* we concluded that:

It is unreasonable to expect an average person to continually research the Federal Register to determine what drugs are controlled substances under RCW 69.50.

*Dougall,* at 122. We believe that it is even more unreasonable to expect an average person in this state to maintain continuous contact with the office of the Code Reviser in Olympia in order to determine which substances have been designated as controlled. This means of notice is not one by which "a person of common intelligence can, with reasonable certainty, determine what substances are designated or rescheduled as controlled substances . . .", possession of which is a felony. *See Dougall,* at 121.

Our conclusion is consistent with our ruling in *Jordan,* where we declared unconstitutional the legend drugs act, RCW 69.41, insofar as it provided insufficient notice of the proscribed conduct. Pursuant to RCW 69.41.010(8), "'[l]egend drugs' means any drugs which are *required by any applicable federal or state law or regulation* to be dispensed on prescription only or are restricted to use by practitioners only." (Italics ours.) We reasoned that notice was inadequate because no particular agency was given authority under the act to classify drugs as legend drugs; therefore, "[t]o establish the continued legality of such conduct, it is necessary to repeatedly check the entire Washington Administrative Code." *Jordan,* at 389. We further noted that the legend drugs act neither included a schedule of drugs initially designated as legend drugs to provide comparative examples nor listed detailed standards for classification in comparison to the Uniform Controlled Substances Act which is at issue here. Our opinion in *Jordan* favorably compared provisions of the Uniform Controlled Substances Act with the legend drugs act insofar as the former provides greater procedural safeguards. However, in *Jordan* we addressed only the procedural safeguards on the face of the Uniform Controlled Substances

Act, and our discussion was not intended to include the sufficiency of the procedural safeguards in the context of emergency rule making under the administrative procedures act, RCW 34.04. Therefore, we perceive no conflict between our present holding that petitioner received inadequate notice of the proscribed conduct and our reasoning in *Jordan.*

Petitioner next argues that the legislature unlawfully delegated to the board the power to schedule Dalmane as a controlled substance, possession of which is a crime. Petitioner bases this contention on two grounds. First, she claims that the RCW provisions which authorized the board to classify drugs in the various schedules did not provide sufficient standards to guide administrative action, citing *Miller v. Tacoma,* 61 Wn.2d 374, 378 P.2d 464 (1963); *State ex rel. Pruzan v. Redman,* 60 Wn.2d 521, 374 P.2d 1002 (1962); and *Yelle v. Bishop,* 55 Wn.2d 286, 347 P.2d 1081 (1959).

She further claims that the authority to define the elements of a crime cannot be delegated to an administrative agency, relying on *Sundberg v. State,* 234 Ga. 482, 216 S.E.2d 332 (1975), and *Howell v. State,* 300 So. 2d 774 (Miss. 1974). We agree with petitioner's conclusion that she is entitled to relief under the nondelegation doctrine, but we base this conclusion on grounds other than those set forth by petitioner.

██ In contending that strict standards to guide administrative action are required to effect a lawful delegation, petitioner cites cases which have been superseded by this court's decision in *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 500 P.2d 540 (1972). *See also State v. Crown Zellerbach Corp.,* 92 Wn.2d 894, 602 P.2d 1172 (1979); *Polygon Corp. v. Seattle,* 90 Wn.2d 59, 578 P.2d 1309 (1978); *Lindsay v. Seattle,* 86 Wn.2d 698, 548 P.2d 320 (1976). In *Barry & Barry,* the court rejected the requirement of strict standards demanded under the traditional nondelegation doctrine, having determined that the purpose of the nondelegation doctrine

should no longer be either to prevent delegation of legislative power or to require meaningful statutory standards; its purpose should be the much deeper one of protecting against unnecessary and uncontrolled discretionary power.

*Barry & Barry,* at 161. *See* K. Davis, *Administrative Law Treatise* § 2.00 (Supp. 1970). Accordingly, in *Barry & Barry,* this court set out two requirements for the lawful delegation of legislative power to which we still adhere:

First, the legislature must provide standards or guidelines which indicate in general terms what is to be done and the administrative body which is to do it. . . .

Second, adequate procedural safeguards must be provided, in regard to the *procedure for promulgation of the rules* and for testing the constitutionality of the rules after promulgation. *See Jordan v. State Bd. of Ins.,* 160 Tex. 506, 334 S.W.2d 278 (1960). Such safeguards can ensure that administratively promulgated rules and standards are as *subject to public scrutiny* and judicial review as are standards established and statutes passed by the legislature.

(Italics ours.) *Barry & Barry,* at 163–64.

█ We hold that the delegation of authority under RCW 69.50.201(a) does not meet the second requirement of the *Barry & Barry* test for adequacy of procedural safeguards insofar as the rule classifying Dalmane as a controlled substance was promulgated under emergency procedures permitted by RCW 34.04.030. Since the second prong of the *Barry & Barry* test is not met, the delegation of authority must be considered unlawful. Therefore, petitioner's conviction arising from agency action pursuant to RCW 69.50.201(a) and RCW 34.04.030 must be reversed.

In the cases of *Barry & Barry* and *Washington State School Directors Ass'n v. Department of Labor & Indus.,* 82 Wn.2d 367, 510 P.2d 818 (1973), this court reviewed challenges to the legislature's authority to delegate to administrative agencies the power to promulgate rules of general applicability. At issue in *Barry & Barry* was the lawfulness of the delegation of authority to the Department of Motor Vehicles to establish a schedule of maximum fees

to be charged by employment agencies. In *Washington State School Directors Ass'n,* it was argued that RCW 51.16.035 of the workmen's compensation act unlawfully delegated to the Department of Labor and Industries the authority to classify all occupations and fix basic rates and premiums. In both cases the delegations of power were held to be constitutional. We consider it crucial that the regulatory schemes challenged in those cases directly affected only the economic interests of the parties. We further note that in neither case was the use of emergency procedures specifically before the court. Under those circumstances, adequate procedural safeguards were held to exist.

This case presents an entirely different set of circumstances than that which was present in either of those cases. The legislature has delegated to the board the authority to promulgate rules which supply the elements of *felonies.* For petitioner, the promulgation of one such rule has resulted in a 5–year prison sentence and the social and civil burdens resulting from a felony conviction. In short, the outcome of this rule making has affected interests of petitioner which far exceed those economic interests at stake in *Barry & Barry* and *Washington State School Directors Ass'n.*

■ To determine whether a delegation of power meets the second criterion regarding procedural safeguards in *Barry & Barry,* it is imperative to consider the magnitude of the interests which are affected by the legislative grant of authority. "For the desideratum should be safeguards proportionate to the grant; the larger the grant, the greater the safeguards required." *Amsterdam v. Helsby,* 37 N.Y.2d 19, 36, 332 N.E.2d 290, 371 N.Y.S.2d 404 (1975) (Fuchsberg, J., concurring).

Our view reflects the approach taken by the United States Supreme Court that the procedural safeguards required to prevent arbitrary administrative action vary, depending on the context. *See* L. Tribe, *American Constitutional Law* §§ 10–13 (1978). In *Mathews v. Eldridge,* 424

U.S. 319, 334, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), the United States Supreme Court observed that

> "'[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. *Arnett v. Kennedy* [416 U.S. 134], *supra,* at 167–168 (Powell, J., concurring in part); *Goldberg v. Kelly* [397 U.S. 254], *supra,* at 263–266; *Cafeteria Workers v. McElroy, supra,* at 895.

*See also* H. Friendly, *"Some Kind of Hearing",* 123 U. Pa. L. Rev. 1267, 1278 (1975).

In contrast to the great personal interest placed at stake under the challenged statutory and regulatory scheme, we find the procedural safeguards afforded in this case to be almost nonexistent. Because the rule classifying Dalmane as a controlled substance was promulgated as an emergency rule, the board dispensed with notice and public comment procedures which are normally afforded in the rule–making process. Theoretically, a party could petition for the repeal of a rule after its promulgation pursuant to RCW 34.04.060, but as discussed above, there was insufficient notice of the promulgation of the rule. In practical terms, a person cannot contest the promulgation of a rule of which she or he has not received notice. As this case sadly illustrates, the first opportunity a person would have to contest such a rule would occur after she or he is already involved in a serious criminal matter. We deem the procedural safeguards available in this case to be inadequate.

Because of our holding that the statutory scheme presents an unlawful delegation on the ground of inadequate procedural safeguards, we decline to address petitioner's claim that the authority to designate the elements of a

crime cannot be delegated to an administrative agency. We note that in *State v. Crown Zellerbach Corp.*, 92 Wn.2d 894, 602 P.2d 1172 (1979), we ruled that it is not an unlawful delegation of the legislature's power to define crimes for the legislature to authorize an administrative agency to issue hydraulic permits when the legislature has declared it unlawful to undertake certain projects without a hydraulic permit or in violation of the terms of a permit. However, in that case we specifically limited our ruling to statutory schemes in which the maximum penalty is a gross misdemeanor.

The petition is granted as to petitioner's drug possession conviction and denied as to her forgery conviction.

UTTER, C.J., and ROSELLINI, WRIGHT, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

STAFFORD, J. (concurring)—Lest there be some misunderstanding, it should be made clear that the instant case is concerned with the adequacy of "notice". We do not hold, however, that a defendant must have "actual notice" of proscribed criminal conduct. Rather, the instant case is couched in terms of "fair" or "reasonable" notice.

BRACHTENBACH, J., concurs with STAFFORD, J.